20 P.3d 709

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Rae Ann LEACH, Defendant–Appellant.**

No. 25898.

Court of Appeals of Idaho.

March 9, 2001.

Beer & Cain, Boise; Lynn, Scott, Hackney Jackson, Boise, for appellant. J. Gardiner Hackney, Jr. argued.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

LANSING, Judge.

Rae Ann Leach was convicted of aggravated battery for having attacked a child with a knife during a period of psychosis. The district court imposed a unified fifteen-year sentence with a one-year minimum term, but suspended the sentence and placed Leach on probation, subject to stringent terms of supervision. The court subsequently found Leach to have violated one of the probation terms and therefore revoked probation and ordered execution of the previously suspended sentence. Leach appeals, contending that the term of probation that she was found to have violated was too ambiguous to permit enforcement, and alternatively, that there was insufficient evidence to support the finding that she violated the term or that any such violation was intentional. Leach also asserts that her sentence is unlawful.

## FACTS AND PROCEDURAL HISTORY

In September 1995, Rae Ann Leach was indicted for aggravated battery, Idaho Code §§ 18–903 and 18–907(a), stemming from an incident where Leach, in a psychotic episode, cut the throat of a child. Leach pleaded guilty to the charge.[1] Evidence presented during the sentencing hearing showed that Leach suffers from schizoaffectic disorder with psychotic hallucinations, but that her illness is well controlled by medication and therapy. The district court imposed a unified fifteen-year sentence with a one-year minimum term, but suspended the sentence and placed Leach on probation. The conditions of probation included a requirement of continued psychiatric treatment and a requirement that Leach be in the company of a responsible adult twenty-four hours a day, seven days a week. In order to comply with the latter term, Leach retained the services of an adult supervisor, Sheri Russell, for day supervision, and Leach's husband fulfilled that role during the evening and at night.

In July 1999, Leach's treating psychiatrist, Dr. Jerelyn Jones, directed that Leach be hospitalized because of a deterioration of Leach's mental stability. A few days later, a motion for a bench warrant for probation violations was filed alleging that Leach had violated her probation terms by failing to submit a truthful monthly report and supply required information about her medical status to her probation officer. This motion was later modified to include an allegation that on several occasions Leach had violated the probation term requiring that she be in the company of a responsible adult at all times.

At the hearing on the alleged violations, Dr. Jones testified that before Leach was arrested for the violations, she had experienced an increase in the number of auditory hallucinations urging her to commit acts of violence. Leach asked Dr. Jones to not report this fact to her probation officer, but Dr. Jones did so because she was concerned that

---

1. Under Idaho law, mental illness is not a defense to a charge of criminal conduct. I.C. § 18–207.

Leach would need more supervision. Several other witnesses testified about lapses in Leach's adherence to the twenty-four-hour supervision requirement. According to this evidence, Leach had regularly attended water aerobics classes at the YMCA. She was usually accompanied by Russell, but on three occasions, Russell was in the women's locker room lounge watching television while Leach was in the swimming pool attending the class. The pool was not visible from the women's locker room, which was located on a floor above the pool. In addition, there was testimony from a neighbor that Leach had been walking alone on the street near her house.

At the conclusion of the hearing, the district court found that Leach violated the conditions of her probation on four occasions when she was not in the company of a responsible adult—three times at the YMCA swimming pool and once on the street. The other alleged violations were found not to be supported by the evidence. As a consequence of the established violations, the district court revoked Leach's probation and ordered execution of the original sentence. The court also denied Leach's subsequent motion to reconsider the sentence.

On appeal, Leach asserts that the term of her probation requiring supervision was too vague and ambiguous to be enforceable and that the evidence does not support a finding that Leach violated this term. In addition, Leach contends that even if a violation occurred, the district court abused its discretion in revoking Leach's probation because any such violation was unintentional or inadvertent. Leach also argues that her sentence constitutes cruel and unusual punishment and/or violates I.C. § 19–2523(1) and (2) and should have been modified upon her post-revocation motion.

## ANALYSIS

■ Probation revocation proceedings ordinarily present three potential issues for the trial court's consideration:

First, was a condition of probation actually violated? Ordinarily, this is a question of fact. Second, does the violation justify revoking the probation? This is a question addressed to the judge's sound discretion. Third, and finally, if probation is revoked, what prison sentence should be ordered? Specifically, if a prison sentence previously has been pronounced but suspended, should that sentence be ordered into execution or should the court order a reduced sentence as authorized by I.C.R. 35? This question, too, is one of discretion. *State v. Adams,* 115 Idaho 1053, 1054, 772 P.2d 260, 261 (Ct.App.1989). A trial court's finding of a probation violation will be upheld on appeal if there is substantial evidence in the record to support the finding. *State v. Chavez,* 134 Idaho 308, 312, 1 P.3d 809, 813 (Ct.App.2000); *State v. Jones,* 129 Idaho 471, 475, 926 P.2d 1318, 1322 (Ct.App.1996); *State v. Lafferty,* 125 Idaho 378, 381, 870 P.2d 1337, 1340 (Ct.App.1994). In deciding whether revocation of probation is the appropriate response to a violation, the court considers whether the probation is achieving the goal of rehabilitation and whether continued probation is consistent with the protection of society. *State v. Jones,* 123 Idaho 315, 318, 847 P.2d 1176, 1179 (Ct.App.1993); *State v. Hass,* 114 Idaho 554, 558, 758 P.2d 713, 717 (Ct.App.1988). If a knowing and intentional probation violation has been proved, a district court's decision to revoke probation will be reviewed for an abuse of discretion. I.C. § 20–222; *State v. Corder,* 115 Idaho 1137, 1138, 772 P.2d 1231, 1232 (Ct.App.1989). However, if a probationer's violation of a probation condition was not willful, or was beyond the probationer's control, a court may not revoke probation and order imprisonment without first considering alternative methods to address the violation. *See Bearden v. Georgia,* 461 U.S. 660, 672–73, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983); *Lafferty,* 125 Idaho at 382–83, 870 P.2d at 1341–42. Only if the trial court determines that alternatives to imprisonment are not adequate in a particular situation to meet the state's legitimate interest in punishment, deterrence, or the protection of society, may the court imprison a probationer who has made sufficient, genuine efforts to obey the terms of the probation order. *Id.*

### A. Vagueness

■ Leach first contends that the condition of probation requiring that she have

constant adult supervision was invalid and unenforceable because it was ambiguous. This term of her probation agreement provided:

> During the period of the defendant's probation she shall be in the company of a responsible adult 24 hours a day, seven days a week. The defendant shall provide her probation officer with whatever information the probation officer deems necessary to monitor compliance with this condition.

Leach asserts that what is meant by "in the company of a responsible adult" is vague and ambiguous and did not give her adequate notice of the conduct that was required or forbidden. However, Leach did not raise this challenge to the probation condition before the district court. At no point during the hearings below did Leach question the validity of this probation term or contend that it was misleading or impermissibly vague. A challenge to the validity of a probation term that was not raised before the district court will not be considered on appeal. *State v. Russell*, 122 Idaho 488, 490, 835 P.2d 1299, 1301 (1992); *State v. Breeden*, 129 Idaho 813, 816, 932 P.2d 936, 939 (Ct. App.1997). Therefore, we will not consider this newly framed issue as to whether the probation term was unenforceable due to a lack of clarity.

### B. Occurrence of Willful Violation

■ Leach next asserts that there was insufficient evidence to support the finding that she violated the probation term or that any such violation was willful. Leach asserts that the evidence that Russell was in the YMCA women's lounge watching television while Leach was downstairs in the swimming pool does not prove a probation violation. This is so, she asserts, because while in the swimming pool she was at all times in the company of fifteen to twenty other adults in the water aerobics class, all of whom were aware that Leach was on probation and was subject to the supervision requirement. Leach contends that the presence of these other adults satisfied the probation term, or at least she believed that it did, so that her violation was not willful or intentional.

We find virtually no support in the record for this contention that the probation term could be satisfied by the presence of *any* responsible adult or that Leach herself so interpreted it. The adult supervision requirement was initially imposed as a condition of Leach's release on bail before she pleaded guilty. At that time, the court directed Leach to notify the prosecutor's office of the name, address and telephone number of each such supervising adult. It was thus clear that specific, designated supervisors were required. Russell and Leach's husband were the designated supervisors during that prejudgment period, and it appears that they were considered by the court and both parties to be continuing in that role when Leach was convicted and placed on probation. At the probation violation hearing, neither Leach nor any other witness testified to an understanding or belief that the twenty-four-hour supervision condition of Leach's probation could be satisfied by the presence of any adults other than Russell or Leach's husband. Coren Farris, Leach's probation officer at the time of the revocation, testified that she was aware that Russell and Leach's husband were the responsible adults approved to supervise Leach. Sheri Russell herself testified that under her supervision, Leach generally remained in her sight at all times. In addition, it appears from the record that the water aerobics instructor and all of the members of the class knew that Leach was required to be in the presence of Russell.

In support of her contention on appeal that she understood the term differently, Leach refers only to the affidavit of Dianne Dimick, who was Leach's probation officer at the time of the alleged violations at the YMCA. In her affidavit, which was submitted in support of Leach's motion for reconsideration after the judge's probation revocation order, Dimick averred that the lapses in supervision at the YMCA, "were a misinterpretation of the order of probation and not an intentional disregard in that the order said she was to be in the company of an adult twenty four hours a day and was on all three occasions in the company of an adult, although not with Sherry [sic] Russell." These conclusory assertions by Dimick are of questionable admissi-

bility and relevance because they purport to describe the state of mind of another person. They are also contradicted by the testimony of multiple witnesses, all of whom understood that Leach was required to be in the presence of an *approved* supervisor twenty-four hours a day, seven days a week. This evidentiary record amply supports the district court's application of the probation term as requiring the immediate presence of an approved supervisor at all times, and also supports the district court's finding that this probation term was knowingly violated by Leach on three occasions at the YMCA.

 With respect to the finding that Leach also violated this term by walking on the street near her home without supervision, Leach argues only that the neighbor's testimony was disputed by Leach's husband and Russell. With regard to this conflict in the evidence, the district court evidently found the neighbor's testimony more credible. It is well-settled that "it is the province of the trier of fact to weigh the credibility of the witnesses, and we will not disturb the trial court's findings where they are supported by sufficient evidence." *State v. Cooper*, 119 Idaho 654, 656, 809 P.2d 515, 517 (Ct.App.1991).

Substantial evidence supports the district court's findings that on four occasions, three times at the YMCA and once on the street outside her home, Leach knowingly violated the term of her probation requiring constant supervision by a responsible adult. Therefore, these findings will not be overturned on appeal.

### C. Probation Revocation and Sentence

We turn next to Leach's argument that the district court committed error in revoking her probation and ordering implementation of the previously suspended sentence because the court did not comply with Idaho sentencing statutes and because, in Leach's view, the sentence violates constitutional prohibitions against cruel and unusual punishment.

#### 1. Application of I.C. § 19–2523

Leach contends that the district court abused its discretion because it did not com-

ply with I.C. § 19–2523 when ordering that Leach's original unified fifteen-year sentence with a one-year determinate term be carried out. Idaho Code § 19–2523(1) delineates certain factors that the court is to consider if a defendant's mental condition is a significant factor at sentencing:

(1) Evidence of mental condition shall be received, if offered, at the time of sentencing of any person convicted of a crime. In determining the sentence to be imposed in addition to other criteria provided by law, if the defendant's mental condition is a significant factor, the court shall consider such factors as:

(a) The extent to which the defendant is mentally ill;

(b) The degree of illness or defect and level of functional impairment;

(c) The prognosis for improvement or rehabilitation;

(d) The availability of treatment and level of care required:

(e) Any risk of danger which the defendant may create for the public, if at large, or the absence of such risk;

(f) The capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law at the time of the offense charged.

 Although Leach asserts a lack of compliance with this statute, it is clear from the record that the district court both received and considered a great deal of evidence regarding Leach's mental condition. Three psychiatrists testified regarding Leach's mental illness and prognosis. There were also multiple written reports from several other mental health experts. While the district court did not specifically mention I.C. § 19–2523, the court plainly recognized the existence and ramifications of Leach's mental illness and took into account the expert testimony that had been provided regarding her prognosis and treatment needs, her lack of personal culpability because her offense was committed while Leach was in a psychotic state, and the risk that Leach presented to the public because of her mental illness. A sentencing court is not required to check off

or recite each of the factors in I.C. § 19–2523(1), but only to consider the substance of those factors. *Fenstermaker v. State*, 128 Idaho 285, 289, 912 P.2d 653, 657 (Ct.App. 1995). The record demonstrates that the district court complied with that obligation here.

Leach is correct, however, in her assertion that the district court did not comply with subsection (2) of the same statute, which requires that the court authorize treatment when certain conditions are established. Idaho Code § 19–2523(2) provides:

> The court shall authorize treatment during the period of confinement or probation specified in the sentence if, after the sentencing hearing, it concludes by clear and convincing evidence that:
>
> (a) The defendant suffers from a severe and reliably diagnosable mental illness or defect resulting in the defendant's inability to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law;
>
> (b) Without treatment, the immediate prognosis is for major distress resulting in serious mental or physical deterioration of the defendant;
>
> (c) Treatment is available for such illness or defect;
>
> (d) The relative risks and benefits of treatment or nontreatment are such that a reasonable person would consent to treatment. (of the offense charged.)

It is apparent that all participants in the proceedings below recognized that the criteria specified in § 19–2523(2) are present in Leach's case. It was perhaps because of the lack of any dispute about these factors and the parties' mutual recognition that treatment would be provided by the Department of Correction (albeit not of the same type and perhaps not of the same effectiveness as that provided by her private physician), that the trial court overlooked its obligation under this statute to expressly authorize treatment in its order for execution of Leach's sentence. While there is no evidence before us indicating that this oversight has prejudiced Leach, it should be corrected on remand. Therefore, the district court is directed on remand to issue an amended revocation order specifically authorizing mental health treatment for Leach.

### 2. Cruel and unusual punishment

Leach also contends that her sentence of incarceration violates the Eighth Amendment prohibition against cruel and unusual punishment because she will not receive adequate psychiatric care in the penitentiary, with the result that her mental health will deteriorate.

The Eighth Amendment obligates the State to provide essential medical treatment to prisoners. *See Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Sivak v. Ada County*, 118 Idaho 193, 195, 795 P.2d 898, 900 (Ct.App.1990). To establish a violation, a prisoner must demonstrate "deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 104, 97 S.Ct. 285. *See also Sivak, supra.* The Eighth Amendment "does not place the burden on the state to guarantee to the inmate fulfillment of all needed treatment similar to that available in the private sector." *State v. Clay*, 124 Idaho 329, 332, 859 P.2d 365, 368 (Ct.App.1993). Mental health treatment, while a legitimate factor for the district court to consider in structuring a sentence, is not constitutionally guaranteed to the defendant at the level demanded by him. *Id.*

We begin our response to Leach's cruel and unusual punishment claim by stating the obvious: the proceedings in the record on this appeal occurred *before* Leach had been in the custody of the Department of Correction or had experienced the treatment provided there. All of the testimony in this appellate record about the likely nature of such treatment and the ramifications of Leach's incarceration for her mental health is necessarily anticipatory and speculative. Such speculative evidence is insufficient to prove an Eighth Amendment violation. We have noted on several past occasions that challenges to the constitutional adequacy of medical treatment or other prison conditions are more appropriately brought in a post-conviction proceeding or a petition for a writ of habeas corpus, which allow for the development of a sufficient factual record. *See*

*State v. Drennen*, 122 Idaho 1019, 1023, 842 P.2d 698, 702 (Ct.App.1992); *State v. Repici*, 122 Idaho 538, 542, 835 P.2d 1349, 1353 (Ct. App.1992); *State v. Garza*, 115 Idaho 32, 34, 764 P.2d 109, 111 (Ct.App.1988); *State v. Roach*, 112 Idaho 173, 175, 730 P.2d 1093, 1095 (Ct.App.1986). In line with this authority, we decline to address the Eighth Amendment issue that Leach seeks to raise because the record before us is inadequate to present the issue.

## D. Post–Revocation Motions

After the district court issued its order revoking Leach's probation, she filed alternative motions for a "new trial," for reconsideration of the probation revocation, and for reconsideration of the sentence. These motions were denied by the district court.

■ Leach's motion for a "new trial" pursuant to Idaho Criminal Rule 34 was actually a request for a new probation violation hearing or disposition hearing. In addressing this motion, the district court held that I.C.R. 34, which empowers a court to grant a new trial to a defendant, applies only where there has been a trial in the first instance and does not authorize new probation violation hearings. We agree. Leach's motion for a new trial under Rule 34 is misplaced, for that rule makes no provision for a new probation violation or disposition hearing.[2] The district court correctly denied the motion.

■ Leach's alternative motions for reconsideration of the probation revocation and for reconsideration of her sentence were, in substance, a single motion pursuant to I.C.R. 35 for reconsideration of the sentence. A motion under this rule is a plea for leniency, addressed to the discretion of the trial court. *State v. Allbee*, 115 Idaho 845, 846, 771 P.2d 66, 67 (Ct.App.1989). On an appeal from the denial of a Rule 35 motion, the appellant bears the burden of showing that the original sentence was unduly severe or that the sentence is excessive in light of new or additional information presented with the motion. *State v. Hernandez*, 121 Idaho 114, 117, 822 P.2d 1011, 1014 (Ct.App.1991); *State v. Caldwell*, 119 Idaho 281, 284, 805 P.2d 487, 490 (Ct.App.1991). An abuse of the trial court's discretion will be found only if, in light of the governing criteria, the sentence is excessive under any reasonable view of the facts. *State v. Charboneau*, 124 Idaho 497, 500, 861 P.2d 67, 70 (1993). The reasonableness of the term of confinement is measured against the sentencing goals of protecting society, deterrence, rehabilitation, and retribution. *State v. Young*, 119 Idaho 510, 511, 808 P.2d 429, 430 (Ct.App.1991); *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). Where reasonable minds might differ as to the appropriateness of the term of imprisonment, we will not substitute our view for that of the district court. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992); *Toohill, supra*.

Leach's offense occurred when, during a psychotic episode, she heard a voice commanding her to kill her neighbor's twenty-month-old daughter. This was necessary, the voice told her, in order to save the life of Leach's own son. To comply with this command, Leach invited the neighbor and the neighbor's children to Leach's home to feed squirrels in the backyard. On the pretext that she would give the child a treat, Leach took the little girl into her house and then into a bedroom where Leach slashed the child's throat with a knife in an attempt to kill her. Moments later, when the victim's mother went into the house looking for her daughter, Leach announced that she had killed the child. Fortunately, the small victim survived the attack. However, the nature of this offense amply illustrates that if Leach's mental illness is not controlled by medication, her illness makes her a very

---

**2.** Rule 34 provides:

> The court on motion of a defendant may grant a new trial to the defendant if required in the interest of justice. If the trial was by court without a jury the court on motion of a defendant for new trial may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment. A motion for a new trial based upon the ground of newly discovered evidence may be made only before or within two (2) years after final judgment. A motion for a new trial based on any other ground may be made at any time within fourteen (14) days after verdict, finding of guilt or imposition of sentence, or within such further time as the court may fix during the fourteen (14) day period.

serious risk to the safety of those around her. Throughout her probation, Leach was compliant with treatment directives of her physicians. Nonetheless, the evidence shows that in the summer of 1999, she began experiencing more "intrusive thoughts" including suicidal and homicidal ideation. She reported to her psychiatrist that she was hearing voices urging her to hurt people. Her psychiatrist found her to be more guarded and paranoid. Leach asked the psychiatrist not to report Leach's increased symptomology to her probation officer. Leach also decided, without permission from her attending psychiatrist, to reduce the amount of medication she was taking.

In rendering its decision to revoke Leach's probation, the district court explained that Leach's initial placement on probation was based upon two primary safeguards—continuing psychiatric care and the requirement of twenty-four-hour supervision. The court concluded that these safeguards could no longer be regarded as sufficient to protect society. The court noted that psychiatry is not an exact science, that there may be periods when the symptoms of a patient like Leach are not fully controlled due to the need for adjustment of medications, and that psychiatrists must rely heavily upon truthful reporting by the patient. Therefore, the second safeguard, constant supervision, had been ordered as a hedge against the possibility of less than perfect effectiveness of psychiatric treatment. The district court was concerned, particularly, about Leach's request that her psychiatrist not relay information about her increasing symptomology to her probation officer and about the psychiatrist's concern that Leach was not being entirely forthcoming in reporting her intrusive thoughts. The court noted that the second safeguard, twenty-four-hour attendance, had broken down, with the attendant becoming complacent and less than vigilant. The court concluded that because the system of safeguards had been shown to be inadequate to assure societal protection if Leach remained on probation, and because there was no secure community-based treatment facility available, the only alternative that would adequately protect society would be Leach's incarceration under terms of the original sentence.

Having reviewed the evidence that was before the district court at the disposition hearing, as well as the information submitted to the district court in support of Leach's motion for reconsideration of her sentence, we conclude that the district court did not abuse its discretion when it declined to reduce Leach's sentence after revoking probation. We recognize, as did the district court, that Leach's crime was a product of her mental illness. Therefore, the sentencing goals of retribution and personal deterrence do not come into play, and it is likely that the goal of rehabilitation would be better accomplished by treatment outside the confines of a correctional facility. Nonetheless, the predominant goal of protecting society justifies the sentence. In sentencing, "[t]he primary consideration is, and presumptively always will be, the good order and protection of society. All other factors are, and must be, subservient to that end." *State v. Moore*, 78 Idaho 359, 363, 304 P.2d 1101, 1103 (1956). Therefore, we find no abuse of discretion in the district court's denial of Leach's motion for reconsideration of her sentence.

### CONCLUSION

The district court correctly found that Leach violated the terms of her probation, and the court did not abuse its discretion in revoking Leach's probation. The district court also did not abuse its discretion by ordering into execution the previously suspended fifteen-year sentence with a one-year determinate term, or by denying Leach's post-revocation motions. However, the district court erred in failing to expressly authorize treatment for Leach in compliance with I.C. § 19-2523(2). Accordingly, the case is remanded for amendment of the revocation order to authorize treatment. The order revoking probation is otherwise affirmed. The order denying Leach's motions for a new trial and for reconsideration of her sentence is also affirmed.

PERRY, J., and KERRICK, J. Pro Tem., concur.