**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 38339**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2012 Unpublished Opinion No. 421 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: March 29, 2012 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| DAVID JARED ARTHUR, JR., | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Renae J. Hoff, District Judge.

Order revoking probation and requiring execution of unified ten-year sentence with five-year determinate term for felony driving under the influence, <u>affirmed</u>; order denying I.C.R. 35 motion for reduction of sentence, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Sarah E. Tompkins, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge

Pursuant to a binding I.C.R. 11 plea agreement, David J. Arthur, Jr. pled guilty to felony driving under the influence. I.C. §§ 18-8004, 18-8005. One of the terms of the agreement was that Arthur waived "any appeals that may be lawfully waived, including, but not limited to, any appeal pursuant to Idaho Criminal Rule 35 and any appeal for post-conviction relief." The district court imposed a unified sentence of ten years, with a minimum period of confinement of five years. However, pursuant to the plea agreement, the district court suspended the sentence and placed Arthur on probation for four years. Thereafter, the district court revoked Arthur's probation and ordered execution of his original sentence. Arthur filed an I.C.R. 35 motion for reduction of his sentence, which the district court denied. Arthur appeals, contending that the district court abused its discretion in revoking probation and in denying his Rule 35 motion.

1

As a preliminary matter we address the state's contention that Arthur waived his right to appeal from the revocation of his probation and denial of his Rule 35 motion. A defendant's waiver of the right to appeal as a term of a plea bargain is generally valid and enforceable. I.C.R. 11(d)(1); *State v. Murphy*, 125 Idaho 456, 457, 872 P.2d 719, 720 (1994). Because plea agreements are contractual in nature, they generally are examined by courts in accordance with contract law standards. *State v. Jafek*, 141 Idaho 71, 73, 106 P.3d 397, 399 (2005); *State v. Doe*, 138 Idaho 409, 410-11, 64 P.3d 335, 336-37 (Ct. App. 2003); *State v. Fuhriman*, 137 Idaho 741, 744, 52 P.3d 886, 889 (Ct. App. 2002). As with other types of contracts, the interpretation of unambiguous terms and the legal effect of the plea agreement are questions of law to be decided by the Court. *Doe*, 138 Idaho at 410-11, 64 P.3d at 336-37. Such interpretations require a trier a fact to discern the intent of the contracting parties, generally by considering the objective and purpose of the provision and the circumstances surrounding the formation of the agreement. *State v. Allen*, 143 Idaho 267, 272, 141 P.3d 1136, 1141 (Ct. App. 2006).

The plea agreement unambiguously provided that Arthur waived "any appeals that may be lawfully waived, including, but not limited to, any appeal pursuant to Idaho Criminal Rule 35." Therefore, we hold that Arthur's appellate challenge to the denial of his Rule 35 motion was waived by his plea agreement. *See State v. Rodriguez*, 142 Idaho 786, 787, 133 P.3d 1251, 1252 (Ct. App. 2006). The waiver of the right to appeal in Arthur's plea agreement does not contain any specific language that the waiver would extend to subsequent probation revocation proceedings. We need not decide in this case whether a general waiver of "any appeals that may be lawfully waived" is sufficient to waive the right to appeal from a subsequent order revoking probation because it is plain from the record that the district court did not abuse its discretion in revoking probation.

The trial court's factual findings in a probation revocation proceeding, including a finding that a violation has been proven, will be upheld if they are supported by substantial evidence. *State v. Rose*, 144 Idaho 762, 765, 171 P.3d 253, 256 (2007); *State v. Knutsen*, 138 Idaho 918, 923, 71 P.3d 1065, 1070 (Ct. App. 2003). It is within the trial court's discretion to revoke probation if any of the terms and conditions of the probation have been violated. I.C. §§ 19-2603, 20-222; *State v. Beckett*, 122 Idaho 324, 325, 834 P.2d 326, 327 (Ct. App. 1992); *State v. Adams*, 115 Idaho 1053, 1054, 772 P.2d 260, 261 (Ct. App. 1989); *State v. Hass*, 114 Idaho 554, 558, 758 P.2d 713, 717 (Ct. App. 1988). In determining whether to revoke probation

a court must examine whether the probation is achieving the goal of rehabilitation and consistent with the protection of society. *State v. Upton*, 127 Idaho 274, 275, 899 P.2d 984, 985 (Ct. App. 1995); *Beckett*, 122 Idaho at 325, 834 P.2d at 327; *Hass*, 114 Idaho at 558, 758 P.2d at 717.

Where a violation of the terms of probation was not willful on the part of the defendant or was due to circumstances outside of the defendant's control, the district court may not revoke probation without first considering whether there were any adequate alternative methods to address the violation. *State v. Sanchez*, 149 Idaho 102, 106, 233 P.3d 33, 37 (2009); *State v. Leach*, 135 Idaho 525, 529, 20 P.3d 709, 713 (Ct. App. 2001). If the trial court determines that alternatives to imprisonment are not adequate in a particular situation to meet the state's legitimate interest in punishment, deterrence, or the protection of society, the court may imprison a probationer who has made sufficient, genuine efforts to obey the terms of the probation order. *Sanchez*, 149 Idaho at 106, 233 P.3d at 37; *Leach*, 135 Idaho at 529, 20 P.3d at 713.

Arthur asserts that the district court abused its discretion in finding that Arthur willfully violated the terms of his probation. Arthur first admitted to violating the terms of the probation by consuming alcohol. However, the district court then reinstated Arthur's probation with the condition, imposed at Arthur's request, that he participate and complete the Lighthouse Rescue Mission's New Life Program and have no additional probation violations. Three weeks later, Arthur again violated the terms of his probation by being terminated from the New Life Program. Arthur admitted to being terminated from the New Life Program and the state dismissed an allegation that Arthur had violated his probation by refusing to comply with a request to submit to testing for alcohol or controlled substances. Arthur was terminated from the New Life Program for the following rule violations:

1. Verbally intimidating other participants.
2. Trying to make telephone calls in violation of the treatment facility rules.
3. Voicing objections to the religious aspects of the program.
4. Passively refusing to take a drug test by not providing a urine sample.

The district court revoked Arthur's probation and ordered execution of his original sentence without modification. Arthur argues that the acts leading to his discharge from the New Life Program were not willful. Specifically, he asserts that he was unable to provide the requested urine sample due to a "shy bladder." However, it is plain from the record that Arthur was given a urine sample cup at 5:30 a.m. but, by noon, had failed to provide a sample and admitted to his

3

probation officer that he had urinated several times that morning. Arthur further contends that any allegations that he was verbally intimidating to other program members and objected to the religious aspects of the program were the result of a conflict with the religious ideology underpinning the program--a program which he requested.[1] According to Arthur, there was a conflict with another member of the treatment group who expressed a belief that Arthur's father, who allegedly practiced a Native American religion, was worshiping idols. Arthur attempts to justify his actions as a defense of his father and other family members. He does not, however, claim that these acts were not willful or that they were beyond his control. Finally, Arthur does not explain the attempted telephone calls in violation of the rules of the treatment facility.

In revoking Arthur's probation and imposing sentence, the district court noted that, when it granted probation the second time, it plainly told Arthur that he would be required to complete

---

[1] Prior to the district court ordering Arthur to complete the New Life Program, the following colloquy occurred:

> THE COURT: How many times have you met with the Lighthouse Mission individuals?
> THE DEFENDANT: One time, your honor.
> THE COURT: What occurred?
> THE DEFENDANT: He told me that if I was just going to this program in spite of prison, that it wouldn't work for me. And he told me if I do apply myself honestly and open in this program, he promised me at the end of the year that I would have a new life and I'd be closer to God with my walk.
> THE COURT: What's your background in religion? Were you raised religiously?
> THE DEFENDANT: Christianity.
> THE COURT: But, I mean, did you go to church on a regular basis?
> THE DEFENDANT: Not growing up, your Honor. I was saved in '97, and then I've been going to church since.
> THE COURT: How did you come up with the idea of the Lighthouse?
> THE DEFENDANT: My P.O. . . . had talked to me about it. The Lighthouse sent me all the information explaining about their program and they gave me about a month to think about it, and I responded and told them it's a program I'd like to work.
> . . . .
> THE COURT: Why would I believe if I gave you another chance, you were going to succeed? You let me down. You failed yourself. Why is it going to be different? Why is it we're not going to be back here in a year doing the same thing?
> THE DEFENDANT: I just -- I honestly believe that this program can help me with the spiritual connection that I need to conquer my disease of alcoholism.

4

the program and that, if he failed, his sentence would be imposed. The district court also noted that Arthur had previously had the benefit of the retained jurisdiction program and that the sentence imposed was the one Arthur agreed to as part of the Rule 11 plea agreement. The district court found that Arthur was not a candidate for further treatment and stated, "Each time I gave you another chance, you failed."

Having reviewed the record in this case, we hold that the district court's finding that Arthur willfully violated his probation is supported by substantial evidence. We also hold that Arthur has failed to show that the district court abused its discretion in revoking probation and imposing sentence. Arthur waived his right to appeal from his Rule 35 motion. Accordingly, we affirm the decision of the district court revoking probation and imposing sentence and the order of the district court denying Arthur's I.C.R. 35 motion.

Chief Judge GRATTON and Judge GUTIERREZ, **CONCUR.**