# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 52062

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Moscow, April 2025 Term |
| | ) | |
| v. | ) | Opinion filed: May 27, 2025 |
| | ) | |
| MISTY DAWN ROSE, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. John T. Mitchell, District Judge.

The district court's order revoking probation is <u>reversed</u> and the judgment imposing sentence is <u>vacated</u>.

Erik R. Lehtinen, State Appellate Public Defender, Boise, for Appellant. Justin M. Curtis argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. Kenneth Jorgensen argued.

_____

MOELLER, Justice.

Misty Dawn Rose appeals from the district court's order revoking her probation. As a condition of probation, the court required that Rose be admitted to "drug court or mental health court." After several attempts, Rose was not admitted to either treatment court. Despite demonstrating that her failure to be accepted was not willful but due solely to eligibility standards, the court revoked Rose's probation. As an additional ground for revocation, the district court cited Rose's failure to appear at a prior hearing while she was in custody on a warrant in another county.

On appeal, the Idaho Court of Appeals affirmed the district court in part and reversed it in part. Rose filed a petition for review with this Court, which we granted. For the following reasons, we reverse the district court's order revoking probation and vacate the judgment imposing Rose's underlying sentence.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

In December 2018, Misty Dawn Rose was charged with Delivery of a Controlled Substance pursuant to Idaho Code section 37-2732(a)(1)(A) in Kootenai County. She pleaded guilty. That same month, Rose was indicted by a grand jury on three counts. The State later amended the indictment to include only two counts: (1) Unlawful Possession of a Weapon by a Convicted Felon pursuant to Idaho Code section 18-3316(1), and (2) Aiding and Abetting a Burglary under Idaho Code sections 18-1401 and 18-204. Again, Rose pleaded guilty to each count. The district court held a joint sentencing hearing in February 2019. In the first case, the district court sentenced Rose to a unified term of ten years with three years fixed, for delivery of a controlled substance. In the second case, Rose was sentenced to a unified term of five years with three years fixed, for unlawful possession of a firearm, and a unified term of ten years with three years fixed, for aiding and abetting a burglary. The district court ordered that her sentences in all three cases be served consecutively, but retained jurisdiction, sending Rose on a rider.

At a rider review hearing on September 17, 2019, the district court noted that, according to the Addendum Presentence Report ("APSI"), Rose had served an "amazing" rider. The district court suspended her sentence and placed her on supervised probation for a period of three years in each case.

A little over two years later, in November 2021, the Idaho Department of Correction filed a Probation Violation Report (the "Report"). The Report indicated that Rose did not attend substance abuse treatment, missed or failed several urinalysis tests, failed to complete her court ordered community service, and violated the restriction against associating with individuals designated by her probation officer. Subsequently, the State filed an addendum to the Report, alleging that Rose had further violated probation by committing a new misdemeanor crime—Possession of Drug Paraphernalia in Shoshone County. Based on the Report, the district court issued a bench warrant.

At a probation violation hearing on December 15, 2021, the district court explained that it was inclined to impose Rose's underlying sentences. Nevertheless, the court decided to give Rose the "benefit of another rider" but specified that "I will not put you on probaiton [sic] unless you are in Drug Court or [Mental Health] court." Following its oral ruling, the district court added to its order the following hand-written entry as term and condition of probation #29: the "Court won't consider probation without Drug Court or [Mental Health Court]."

After Rose successfully completed her second rider, the district court held a rider review hearing on June 16, 2022. Rose informed the district court that she did not qualify for mental health or drug court because she does not have a qualifying diagnosis and she was still on the rider program. Rose explained that, prior to leaving on her second rider, she had reached out to drug court coordinator Mary Wolfinger, who had told her that she did not meet the criteria for mental health court because she does not have a qualifying diagnosis. Rose also described her efforts to reach out to the Kootenai County drug court coordinator, Angela Reynolds, and the Shoshone County Drug Court coordinator, Mike Smith. Rose explained that she did not qualify for Kootenai County drug court at that time because they did not screen individuals on rider programs—she would have to be granted probation before she could be screened. She also advised the court that she did not qualify for Shoshone County drug court because it was a "presentence" court and they do not accept applications from individuals who are "post-sentence."

The district court then placed Rose on three years' supervised probation but set a probation review hearing a month out to give her additional time to be admitted into a treatment court. The district court stated:

| | |
|---|---|
| The Court: | And I'm going to have a probation review hearing -- |
| The Defendant: | Okay. |
| The Court: | -- on July 21st -- |
| The Defendant: | Okay. |
| The Court: | -- 2022 at 11:00. If you're not accepted into drug court, its's a violation of probation. |

Rose failed to appear at the July 21, 2022, probation review hearing because she was arrested in Shoshone County earlier that morning after responding to a bench warrant for Possession of Drug Paraphernalia, the same crime she was alleged to have committed after serving her first rider, as noted above. Although she failed to appear, her defense counsel in Kootenai County was present and noted on the record that, as of the date of the review hearing, Rose had still not been accepted into a treatment court. Considering these facts, the district court stated:

| | |
|---|---|
| The Court: | Okay. So I'm going to set this for a hearing a couple weeks down the road. I explained to Ms. Rose that if she's not accepted into drug court, it's a violation of her probation, and that was to have occurred by today, so I think technically she's in violation status. |

Due to Rose's absence, the district court continued the hearing until August 11.

As of August 11, 2022, Rose had still not been admitted into a treatment court. At the hearing, Rose's counsel submitted to the court that, "she does not meet criteria for Kootenai County Drug Court, and so she cannot be accepted into the program." Based on this the district court stated:

> The Court: Okay. Well, I am then going to start the order to show cause process and make the allegation, Ms. Rose, that you have violated your probation as set forth in Term and Condition of Probation 29 which reads: "Attend probation review hearing on July 21st, 2022, at eleven o'clock in the morning. If not accepted into drug court, it's a violation of probation," and that was discussed with you on June 16th when I verbally pronounced that requirement.

The district court then issued a no-bond bench warrant, took Rose into custody, and set an evidentiary hearing for September 6, 2022.

At the September 6, 2022, evidentiary hearing, several people testified on Rose's behalf. First, Austin Turpin, Rose's parole officer,[1] testified that Rose had made attempts to get into drug court:

> [Mr. Turpin:] So I'm aware that Ms. Rose has attempted to try and get into drug court, Kootenai County Drug Court. I know that she was denied originally before being released off her rider. I also know that she was denied in Shoshone County Drug Court as well. Kootenai County Drug Court said that she was denied because she does not qualify.
>
> [Prosecutor:] And that was before she finished her rider; is that right?
>
> [Mr. Turpin:] So she attempted before she was placed back on probation and then she attempted again afterwards with Kootenai specifically.

After Turpin's testimony, Michael Smith, Shoshone County Drug Court Coordinator, testified why Rose was not eligible for Shoshone County Drug Court:

> [Mr. Smith:] Well, first off, I would like to inform the [c]ourt that we are a presentence court, so the prosecutor meets with the public defender or attorney representing, and they make -- there's an agreement made that they would refer that client to our program for an application, and with that they would agree to make an admission in district court at that time if it's a felony or magistrate court if it's a misdemeanor because we deal with both of those types of offenses, and at that point I would meet with the individual and discuss their situation and gather information reference their past criminal history or family, those types of

---

[1] Although Turpin testified that he was Rose's "parole" officer. it is unclear from the record whether he meant that he was her "probation" officer.

4

|  |  |
|---|---|
|  | things similar to a social history or a PSI, and complete an evaluation and report from there and then recommend to go to treatment for an evaluation. |
| [Def. Attorney:] | But that is for only somebody who has not yet been sentenced yet. Is that what you are meaning in referring to "presentence"? |
| [Mr. Smith:] | Yes. |
| [Def. Attorney:] | Is anybody able to get into the program who has completed a rider? |
| [Mr. Smith:] | No. We've never accepted anybody with that situation. |
| . . . . | |
| [Def. Attorney:] | And do you know whether or not Misty Rose is presentence or post-sentence status? |
| [Mr. Smith:] | My understanding she's post-sentence. |
| [Def. Attorney:] | All right. So that would mean that she wouldn't qualify for the Shoshone County Drug Court program; is that correct? |
| [Mr. Smith:] | That's correct. |

After Smith's testimony, Angela Reynolds, Kootenai County Drug Court Coordinator, testified that Rose was not eligible for drug court in Kootenai County:

|  |  |
|---|---|
| [Def. Attorney:] | What is the main criteria for somebody to be accepted into the Kootenai County Drug Court program? |
| [Ms. Reynolds:] | They reside in Kootenai County, their LSI[2] score is within our range, and they meet ASAM[3] level two criteria. |
| . . . . | |
| [Def. Attorney:] | And does Ms. Rose qualify or meet criteria for the Kootenai County Drug Court program? |
| [Ms. Reynolds:] | No. |
| [Def. Attorney:] | And why is it that she doesn't meet criteria for the program? |
| [Ms. Reynolds:] | When we spoke on the phone last, she was residing in Shoshone County. That would be the primary reason. |
| [Def. Attorney:] | And is there any issue with the level of treatment for Ms. Rose at this time? |

---

[2] LSI stands for Level of Service Inventory. LSI assessments are used to evaluate the level of treatment and supervision needed to prevent a defendant from reoffending.

[3] ASAM stands for the American Society of Addiction Medicine. ASAM criteria is a "comprehensive set of standards for placement, continued service, and transfer of patients with addiction and co-occurring conditions." *About the ASAM Criteria*, American Society of Addiction Medicine, https://www.asam.org/asam-criteria/about-the-asam-criteria (last accessed Apr. 30, 2025).

[Ms. Reynolds:] At that time, if I recall, she had no use since November of '21. Her substance use was in, uh, early remission, and the recommendation was more geared towards mental health. She was also screened for mental health court at the time that we talked as well.

. . . .

[Def. Attorney:] And were you aware that Ms. Rose did not meet criteria for the mental health drug court program?

[Ms. Reynolds:] Um, I became aware of that in early August.

. . . .

[Def. Attorney:] And at this time right now as we sit here today, does Ms. Rose meet criteria for the Kootenai County Drug Court program?

[Ms. Reynolds:] If her circumstances have not changed, then no.

Despite testimony that Rose did not meet the diagnostic criteria for admission to mental health court, and that she was not eligible for admission to either the Shoshone or Kootenai County drug courts, the district court nevertheless found that Rose had willfully violated probation, stating:

> . . . Well, I, first of all, do find that there has been a *willful* violation of probation, and it was very clear to Ms. Rose and accepted by Ms. Rose that probation term and condition. . . . Ms. Reynolds testified that were she to be living here, then she would -- she could be re-screened and -- and Ms. Rose hasn't tried to get her probation switched over here, find housing through transitional housing, do whatever it was that was necessary. She put herself into that own *impossible situation* of not qualifying in Kootenai County because of her residence in Shoshone County, not qualifying in Shoshone County due to being post-sentencing, and so I am finding that it's willful . . . .

(Emphasis added). The district court went on to address Rose's failure to appear:

> I also find that as of the date of the review hearing that she failed to appear for that hearing. That is proven beyond any doubt at all. Whether that was willful, I do find it willful. . . . We have a jurisdictional review hearing, there's no mention of the new charges at that hearing, and the first time that it's brought to my attention is in defense to Ms. Rose not being present for the July 21st, 202[2], probation review hearing, so I find it's willful. She wasn't here, and that's of her own doing, not having dealt with those -- that issue which was existent even before going on the rider, so I do find that both allegations have been proven for Ms. Rose's failure to get into drug court and also the failure to appear at the July 21st, 202[2], hearing.

Thus, as an alternative to the probation violation for failing to be admitted into a treatment court, the district court made a "backup finding" that Rose's failure to attend the probation review hearing on July 21, 2022, was another willful probation violation. The court then revoked her probation and imposed her concurrent, unified sentences. Rose timely appealed.

6

On appeal, we assigned this case to the Court of Appeals, which affirmed in part, reversed in part, and remanded the case. *State v. Rose*, Nos. 50112 & 50113, 2024 WL 378615 (Idaho Ct. App. Feb. 1, 2024). The Court of Appeals first held that Rose's failure to be admitted to a treatment court was not willful; therefore, revoking her probation solely on that ground would be an abuse of discretion. *Id.* at *3. Next, the Court of Appeals concluded that the "district court's finding that Rose violated her probation by her willful failure to appear for the July 21 hearing is supported by substantial competent evidence." *Id.* at *4. However, because it could not "determine from the record whether the district court would have revoked probation solely upon Rose's failure to appear," it reversed and remanded for a probation disposition hearing." *Id.* at *5. Lastly, the Court of Appeals refused to assign a different judge on remand since "Rose ha[d] not shown that the district judge assigned to this case will not properly exercise his discretion on remand." *Id.*

Rose filed a petition for review with this Court, which we granted.

## II.    STANDARDS OF REVIEW

When this Court is presented with a petition for review of a Court of Appeals' decision, it gives thoughtful consideration to the Court of Appeals' views but reviews the lower court's decision directly. *State v. Buehler*, 173 Idaho 717, 720, 547 P.3d 1203, 1206 (2024). "This Court is not merely reviewing the correctness of the Court of Appeals' decision; rather, this Court is hearing the matter as if the case were on direct appeal from the trial judge's decision." *State v. Ross*, 170 Idaho 58, 61, 507 P.3d 545, 548 (2022) (quoting *Gilpin-Grubb v. State*, 138 Idaho 76, 79, 57 P.3d 787, 790 (2002)).

"Review of a probation revocation proceeding involves a two-step analysis. First, it is determined whether the terms of probation have been violated. If they have, it is then determined whether the violation justifies revocation of the probation." *Id.* at 62, 507 P.3d at 549 (internal citations omitted). We have further explained that,

> [w]ith regard to the first step, a district court may revoke probation only upon evidence that the probationer has violated probation . . . . A court's finding that a violation has been proved will be upheld on appeal if there is substantial evidence in the record to support the finding. . . .
> As to the second step, the decision whether to revoke a defendant's probation for a violation is within the discretion of the district court. Thus, we review a district court's decision to revoke probation under an abuse of discretion standard.

*Id.* (alterations in original) (quoting *State v. Garner*, 161 Idaho 708, 710, 390 P.3d 434, 436 (2017)).

When evaluating whether a trial court abused its discretion, we must consider "whether the district court (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Id.* (internal quotation marks and citation omitted).

## III. ANALYSIS

### A. The district court abused its discretion in revoking Rose's probation due to her non-acceptance into a treatment court because it was not a willful violation of probation.

Rose argues that the district court erred in finding that her non-acceptance into drug court was a willful violation of probation. On review, the State "acknowledges that Rose's failure to be admitted to drug court was not due to her unwillingness but due to circumstances that were not within her control." We agree that Rose's non-acceptance into drug court was not a willful violation of probation as required under Idaho Criminal Rule 33(f).

Idaho Criminal Rule 33(f) delineates when and how probation may be revoked. Rule 33(f) provides that:

> The court must not revoke probation except after a hearing at which the defendant is present and apprised of the grounds on which revocation is proposed. The defendant may be admitted to bail pending the hearing. The court must not revoke probation unless there is an admission by the defendant or a finding by the court, following a hearing, that the defendant *willfully* violated a condition of probation.

I.C.R. 33(f) (emphasis added). Thus, to revoke probation, a defendant must first have notice of the violation or violations for which the court might revoke probation. Second, the defendant must either admit that the violation was willful or the court must make a finding of willfulness. *Id.*; *see State v. Garner*, 161 Idaho 708, 711, 390 P.3d 434, 437 (2017). A trial court's "finding that a [probation] violation has been proved will be upheld on appeal if there is substantial evidence in the record to support the finding." *Garner*, 161 Idaho at 710, 390 P.3d at 436 (quoting *State v. Knutsen*, 138 Idaho 918, 923, 71 P.3d 1065, 1070 (Ct. App. 2003), *overruled on other grounds as stated in State v. Reilly*, 169 Idaho 801, 503 P.3d 1071 (Ct. App. 2021)).

In *Garner*, the defendant, following a successful rider, was placed on supervised probation for five years. *Id.* at 709, 390 P.3d at 435. Garner's terms of probation specified that he had to abide by the no contact order entered in his underlying stalking case. *Id.* at 709–10, 390 P.3d at 435–36. When the stalking victim saw Garner in a parking lot near her workplace and reported it to the police, Garner was arrested for allegedly violating the terms of his probation. *Id.* at 710, 390

8

P.3d at 436. After an evidentiary and disposition hearing, the district court imposed Garner's underlying sentence. *Id.*

Garner appealed, arguing that the district court abused its discretion in revoking probation. *Id.* at 712, 390 P.3d at 438. This Court affirmed, noting that the district court had complied with Idaho Criminal Rule 33(f) because it made an express finding that Garner was in willful violation of his terms of probation, and there was substantial and competent evidence to support this finding. *Id.* The record supported the finding that Garner clearly saw the victim because he immediately began texting a friend about the victim, saying "She is going to try to bust me." *Id.* Additionally, we concluded that given the inconsistent explanations Garner had offered to explain his presence in the parking lot, the district court could make an inference of willfulness. *Id.*

Unlike in *Garner*, in Rose's case, there is not substantial and competent evidence in the record to support a finding or inference that she *willfully* violated probation by not being accepted into a treatment court. Instead, the record supports the exact opposite conclusion: Rose's violation was not willful because admission to the Kootenai County or Shoshone County drug courts was outside of her control. *See State v. Sanchez*, 149 Idaho 102, 106, 233 P.3d 33, 37 (2009) ("[I]f a probationer's violation of a probation condition was not willful, or was beyond the probationer's control, a court may not revoke probation and order imprisonment without first considering alternative methods to address the violation." (quoting *State v. Leach*, 135 Idaho 525, 529, 20 P.3d 709, 713 (Ct. App. 2001)).

Shoshone County Drug Court Coordinator Michael Smith testified that Rose was not eligible for drug court there because she was "post-sentence," and they do not accept "anybody with that situation." Kootenai County Drug Court Coordinator Angela Reynolds testified that Rose was not eligible for drug court there because she did not reside in Kootenai County and because "[h]er substance use was in . . . early remission," which meant she did not meet ASAM level two treatment criteria. Likewise, Rose had been informed by Mental Health Court Coordinator Mary Wolfinger that she did not have a qualifying diagnosis for admission into mental health court. Thus, Rose's non-acceptance into the Kootenai County and Shoshone County treatment courts was a result of factors beyond her control. Therefore, we hold that the district court abused its discretion when it concluded Rose willfully violated probation by not being admitted to a treatment court.

9

**B. The district court abused its discretion when it concluded that Rose's absence from the July 21, 2022, hearing supplied it with an alternative basis for revoking probation.**

Next, Rose argues that the district court's "backup" finding that she willfully violated probation by failing to appear at her probation review hearing on July 21, 2022, was "legally inadequate" to support its decision to revoke probation. Rose had missed the July 21 hearing because she was taken into custody earlier that morning when she voluntarily appeared in Shoshone County in response to an outstanding misdemeanor warrant. Rose argues that Idaho Criminal Rule 33(f) precluded the district court from revoking her probation on this ground because she was never provided notice that her prior failure to appear was a proposed ground for revocation.

The State counters that the district court's decision to revoke probation should be affirmed because "substantial evidence in the record supports the finding that Rose willfully violated her probation by failing to appear at" the review hearing on July 21, 2022. The State maintains that Rose's failure to attend the July 21, 2022, hearing was a willful probation violation because "[h]er failure to bond out in time to attend the review hearing was a direct consequence of her decision to turn herself in to jail in Shoshone County on the morning of the review hearing." Additionally, the State argues that Rose knew her absence on July 21 was an alternate ground for revocation because she provided argument at the September 6, 2022, evidentiary and disposition hearing as to why she was not present on July 21. We disagree with the State's position.

Assuming, arguendo, that the district court was correct in deeming the failure to appear was willful, the State's arguments still fail because neither the court nor the State provided Rose with proper notice. As mentioned above, Rule 33(f) specifies that "[t]he court must not revoke probation except after a hearing at which the defendant is present and apprised of the grounds on which revocation is proposed." I.C.R. 33(f). While a probation revocation hearing is not a "stage" of a criminal prosecution, it can result in a loss of liberty; therefore, it requires that a probationer be afforded due process. *Gagnon v. Scarpelli*, 411 U.S. 778, 781–82 (1973). Due process, at a minimum, requires that the defendant be "provided with notice and an opportunity to be heard." *State v. Head*, 172 Idaho 564, 572, 535 P.3d 188, 196 (2023) (quoting *Bradbury v. Idaho Jud. Council*, 136 Idaho 63, 72, 28 P.3d 1006, 1015 (2001)). Rose was not apprised by the court or the State that her probation might be revoked based on her absence from the hearing on July 21. Instead, prior to the September 6, 2022, hearing, she was only advised that probation might be revoked on just one basis: her non-acceptance to a treatment court.

10

The record is replete with instances that reflect this view. For example, at the rider review hearing on June 16, 2022, the district court stated:

The Court:       And I'm going to have a probation review hearing --

The Defendant:  Okay.

The Court:       -- on July 21st --

The Defendant:  Okay.

The Court:       -- 2022 at 11:00. If you're not accepted into drug court, it's a violation of probation.

The Defendant:  Okay.

The district court only advised Rose that it was her non-acceptance into a treatment court that would constitute the alleged probation violation. The reference to the July 21 hearing was merely the deadline for acceptance, not a separate term of probation.

At the July 21, 2022, hearing, which Rose failed to attend because she had been taken into custody in Shoshone County earlier that morning on a misdemeanor warrant, defense counsel informed the district court that Rose had not been accepted to a treatment court. The court responded:

The Court:       Okay. So I'm going to set this for a hearing a couple weeks down the road. I explained to Ms. Rose that *if she's not accepted into drug court, it's a violation of her probation*, *and that was to have occurred by today,* so I think technically she's in violation status.

(Emphasis added). Again, the district court made clear that it was treating Rose's non-acceptance as the only ground for revoking her probation. There was no suggestion that her absence from the hearing that day had now become a separate ground for revoking probation. The district court reiterated this at the next probation review hearing on August 11, 2022, stating:

The Court:       Okay. And just to I guess make a record, Ms. Rose, I am making the allegation that you violated your probation by not getting into -- not being accepted into drug court by July 21st I think it was. Do you understand that allegation?

The Defendant:  Yes, sir.

Once again, the focus was solely on Rose's non-acceptance into drug court by July 21, 2022.

It was not until the conclusion of the probation violation evidentiary hearing on September 6, 2022, that the district court first mentioned that it was treating Rose's failure to appear on July 21 as an additional basis for revocation. The district court explained:

11

The Court:        All right. Well, I, first of all, do find that there has been a willful violation of probation, and it was very clear to Ms. Rose and accepted by Ms. Rose that probation term and condition. It was term and condition Number 29, and I'm not persuaded by the argument that she has no other choice. . . .

. . . .

*I also find that as of the date of the review hearing that she failed to appear for that hearing. That is proven beyond any doubt at all. Whether that was willful, I do find it willful. . . .* We have a jurisdictional review hearing, there's no mention of the new charges at that hearing, and the first time that it's brought to my attention is in defense to Ms. Rose not being present for the July 21st, 2021 [sic], probation review hearing, so I find it's willful. *She wasn't here, and that's of her own doing, not having dealt with those -- that issue which was existent even before going on the rider, so I do find that both allegations have been proven for Ms. Rose's failure to get into drug court and also the failure to appear at the July 21st, 2021 [sic], hearing.*

(Emphasis added). Importantly, the italicized portion of the district court's statements at the end of the hearing was the only instance where the district court stated that Rose's absence on July 21, 2022, provided an alternative ground for establishing a willful violation of her probation. Thus, Rose was never put on notice regarding this alleged violation prior to her probation potentially being revoked on this ground.

The State maintains that Rose knew her absence on July 21 was an alternate ground for revocation because she explained her absence to the court at the September 6, 2022, evidentiary and disposition hearing. However, any argument raised by Rose's defense counsel explaining her absence at an earlier hearing does not nullify the lack of notice. At most, it was merely defense counsel's acknowledgement that his client was required to attend the July 21 hearing and an attempt to explain his client's absence. Under these circumstances, it does not amount to a waiver of the notice requirement.

The Court of Appeals concluded that it could not determine from the record whether the district court would have revoked probation based solely on Rose's absence at the July 21 hearing. Therefore, it remanded the case so that the district court could clarify whether the missed hearing provided a sufficient basis for revoking probation and imposing the full sentence. *State v. Rose*, Nos. 50112 & 50113, 2024 WL 378615, at *5 (Idaho Ct. App. Feb. 1, 2024). On review, we conclude that a remand is unnecessary to determine this issue because Rose's absence on July 21,

2022, was never an alleged ground for revocation; consequently, it cannot now serve as post hoc justification for revoking her probation or imposing her sentence.

**C. Any future proceeding in this matter should be heard before a different district judge.**

Rose also asks this Court to remand for a new disposition hearing before a different district court judge. Rose points this Court to *State v. Le Veque*, 164 Idaho 110, 426 P.3d 461 (2018), and *State v. Allmaras*, 167 Idaho 698, 475 P.3d 1220 (Ct. App. 2020). Importantly, these two cases involved the same district judge as presided in Rose's cases and, in both cases, the appellate court remanded for further proceedings before a different judge.

The manner in which the district judge handled this case once again compels us to conclude that a new judge should be appointed on remand. Therefore, we order that a different district judge be assigned to preside over any future proceedings in this matter.

## IV.    CONCLUSION

For the reasons set forth above, we hold that the district court erred in concluding that Rose willfully violated the terms of her probation. Furthermore, because Rose was not provided notice that her absence from the July 21, 2022, hearing was a separate ground for revoking her probation, we hold that it cannot serve as an after-the-fact justification for revoking her probation. Accordingly, we reverse the district court's order revoking Rose's probation, vacate the judgment imposing her sentence, and remand for further proceedings consistent with this opinion. On remand, any future proceedings in Case Numbers CR28-18-18576 and CR28-18-20788 shall be assigned to a different district judge.

Chief Justice BEVAN, Justices BRODY, ZAHN, and MEYER CONCUR.

13