1 P.3d 809

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Fred Martinez CHAVEZ, Defendant–Appellant.**

Nos. 25304/25305.

Court of Appeals of Idaho.

May 2, 2000.

Ismael Chavez, Caldwell, for appellant.

Hon. Alan G. Lance, Attorney General; Rebekah A. Cude, Deputy Attorney General, Boise, for respondent.

LANSING, Judge.

In this appeal, Fred Martinez Chavez challenges a district court order that revoked Chavez's probation and ordered execution of prison sentences. Chavez argues that the State's evidence did not prove the charged probation violations and that, even if such violations were established, it was an abuse of the trial court's discretion to revoke Chavez's probation. Chavez also asserts that his sentences are excessive. We conclude that the district court did not err in revoking probation, but we agree with Chavez's assertion that one of his sentences is unreasonably severe in view of all of the circumstances surrounding Chavez's offenses and his overall behavior while on probation.

## FACTS AND PROCEDURAL HISTORY

In 1994, Fred Chavez was arrested for possession of methamphetamine, Idaho Code § 37–2732(c), possession of drug paraphernalia, I.C. § 37–2734A, and driving without privileges, I.C. § 18–8001. He pleaded guilty to the possession and driving without privileges charges in exchange for the dismissal of the paraphernalia charge. For the possession offense, the district court imposed a unified sentence of six years' incarceration, with two years determinate, but suspended the sentences and placed Chavez on probation for six years. For the misdemeanor offense of driving without privileges, Chavez received a sentence of one year's incarceration in the county jail, but the district court suspended eight months of this sentence and allowed Chavez to serve the remainder with work release privileges.

Approximately three months later, while on work release, Chavez failed to return to the jail at the end of his workday. He remained at large for approximately five months. Chavez was consequently charged in a separate case with escape, I.C. § 18–2505, and a probation violation report was filed in his first case. Chavez entered into a plea agreement for disposition of both the escape charge and the probation violation. He agreed to plead guilty to escape and to admit the probation violation, and the prosecutor agreed to recommend that Chavez be placed back on probation, subject to six to nine months' incarceration in the county jail. The plea agreement contained no recommendation as to the length of the underlying sentence which would be suspended.

A consolidated hearing was conducted for Chavez's sentencing on the escape offense and for disposition of the associated probation violation. At this hearing, Chavez presented evidence to explain the reason for his "walk away" escape from the work release program. Through his own testimony and that of several of his relatives, Chavez showed that he had absconded in order to be with his family and to protect them from threats of harm by individuals seeking revenge against Chavez's stepson. The stepson had previously testified for the State in the prosecution of a drug dealer. After giving this testimony, the stepson began receiving threats from members of the drug dealer's family or criminal organization. The stepson was approached by men in a parking

lot who threatened to kill him in retribution for his testimony. Thereafter, they stalked the stepson and members of his family including the stepson's mother, Chavez's wife. These people were seen watching and photographing the homes of both the stepson and Chavez's wife, and the stepson's home was broken into. Then, while Chavez was serving his jail sentence, a group of men drove by his wife's residence and shot out a window on her vehicle. Chavez's stepson, who was himself on probation and therefore prohibited from leaving the state, requested of his probation officer that he be transferred to supervision in another state for his safety, but this request was denied. The stepson and his family also repeatedly sought help from the police and the prosecutor, but were told that there was little that could be done to protect them. According to Chavez's testimony, the incident in which his wife's vehicle was fired upon prompted him to abscond from jail in order to protect his family. Thereafter, Chavez and his wife, together with the stepson and his family, moved from motel to motel and to the residences of friends and family in an effort to avoid the men who were threatening them. This continued until Chavez was apprehended. The presentence investigation report concluded that "information from collateral contacts" indicated that the threats to Chavez's family had been real and that he was warranted in having concern for his family.[1]

At the end of the sentencing hearing, the district court imposed a fixed five-year sentence for the escape offense. As required by I.C. § 18–2505(1), this sentence was made consecutive to Chavez's sentences for his earlier offenses. However, the district court followed the parties' recommendation in the plea agreement by suspending the sentence, placing Chavez on probation for escape, and reinstating his probation in the methamphetamine case.

Chavez thereafter served his probation without incident for nearly four years. Then, on November 12, 1998, a report of probation violations was filed alleging that Chavez had committed several breaches of his probation terms including changing his residence three times without prior permission from his probation officer, failing to make a monthly report to his probation officer, failing to maintain his employment, and failing to make restitution and supervision fee payments. Chavez denied these allegations.

At the probation violation hearing, Chavez's probation officer testified that Chavez did not make an in-person report or a written report for the month of October 1998 as required. When the probation officer sent a letter to Chavez at his last known residential address, Chavez's wife responded with a telephone call telling the probation officer that Chavez had moved out several weeks before and that she did not know his whereabouts. The probation officer then sought to contact Chavez at his place of employment but was told that Chavez had failed to report to work for the last two weeks. The probation officer also said that in February 1998 and May 1998, Chavez had changed residences, notifying the probation officer only after the fact instead of obtaining advance permission as required by his probation terms. The officer also testified that Chavez had been discharged from a previous job at a sugar factory and was in arrears on payment of supervision fees.

Chavez offered explanations for his behavior, stating that he had lost his sugar factory job and had been unable to continue to perform the duties in his subsequent employment because of a back injury, sustained in an automobile accident, which limited his ability to lift. He acknowledged having changed residences in February and May of 1998 without prior permission but described circumstances that he said required a sudden and unexpected move, and he stressed that he had notified his probation officer soon thereafter. With respect to his alleged October 1998 move, Chavez denied that he had made a change of residence but said he had only temporarily left his home, staying for a time with his father, because Chavez's wife had announced that she wanted a divorce. Chavez said he thought it necessary to leave the home temporarily in the hope that the

---

1. After Chavez's arrest for escape, the judge who had placed his stepson on probation authorized the stepson to move to another state for his safety.

marital strife would subside. Chavez admitted that he had not reported to his probation officer in October 1998 and that he was in arrears on the payment of probation supervision fees.

The district court found that Chavez had violated his probation terms by failing to report to his probation officer, changing residences without permission, losing his employment for excessive absences, and failing to pay supervision fees. The court revoked Chavez's probation and ordered into execution the original unified six-year sentence with a two-year minimum term for the possession of methamphetamine and the consecutive five-year determinate sentence for escape.

Chavez thereafter filed a motion for reduction of his sentences and submitted therewith medical records to verify his assertion that a back injury had necessitated his absences from his prior employments. The motion was denied by the district court.

Chavez now appeals, asserting that the district court's finding of probation violations is not supported by the evidence, that it was error for the district court to revoke probation, and that the district court abused its discretion by failing to reduce Chavez's sentences upon revocation of probation.

## ANALYSIS

In a probation revocation proceeding, the district court must address three issues:

First, was a condition of probation actually violated? Ordinarily, this is a question of fact. Second, does the violation justify revoking the probation? This is a question addressed to the judge's sound discretion. Third, and finally, if probation is revoked, what prison sentence should be ordered? Specifically, if a prison sentence previously has been pronounced but suspended, should that sentence be ordered into execution or should the court order a reduced sentence as authorized by I.C.R. 35? This question, too, is one of discretion.

State v. Adams, 115 Idaho 1053, 1054, 772 P.2d 260, 261 (Ct.App.1989). Chavez challenges the district court's decision on each of these three issues.

### A. Sufficiency of the Evidence of a Probation Violation.

We conclude that Chavez's first assertion, that the district court erred in finding that Chavez had violated his probation, is without merit. A finding of a probation violation will be upheld on appeal if the finding is supported by substantial competent evidence in the record. State v. Lafferty, 125 Idaho 378, 381, 870 P.2d 1337, 1340 (Ct.App. 1994); State v. Jones, 123 Idaho 315, 318, 847 P.2d 1176, 1179 (Ct.App.1993). Chavez himself admitted most of the violations. Rather than denying the acts constituting violations, Chavez testified to circumstances that he thought should excuse them. Although these circumstances may be mitigating factors that warrant consideration by the district court, they do not invalidate the district court's findings that violations occurred based upon the probation officer's testimony and Chavez's own admissions.

### B. Revocation of Probation

Idaho Code § 20–222 authorizes the revocation of probation at any time if the probationer violates any condition of the probation. Hence, once a violation has been found, the district court must determine whether it is of such seriousness as to warrant revoking the probation. Adams, supra. In making this discretionary decision, the trial court must examine whether the probation is achieving the goal of rehabilitation and whether continuation of the probation is consistent with the protection of society. Jones, supra; State v. Hass, 114 Idaho 554, 558, 758 P.2d 713, 717 (Ct.App.1988). The trial court's decision to revoke probation will not be disturbed on appeal absent an abuse of discretion. State v. Beckett, 122 Idaho 324, 325–26, 834 P.2d 326, 327–28 (Ct.App. 1992); State v. Corder, 115 Idaho 1137, 1138, 772 P.2d 1231, 1232 (Ct.App.1989). In our review, we conduct a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistent with any legal standards applicable to the specific choice before it; and (3)

whether the lower court reached its decision by an exercise of reason. *State v. Hedger,* 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989); *Jones,* 123 Idaho at 318, 847 P.2d at 1179; *Beckett,* 122 Idaho at 325, 834 P.2d at 327.

■ Chavez contends that the district court's decision to revoke his probation was an abuse of discretion because the district court did not reach its decision by an exercise of reason. We cannot agree. Most of Chavez's violations related to probation terms requiring communication with the probation officer to enable the officer to monitor Chavez's living and working environments and his behavior. In October 1998, Chavez failed to report to his probation officer and moved out of his residence without informing the probation officer of his whereabouts. When the probation officer sought to contact Chavez at his place of employment the officer learned that Chavez had not been to work for the past two weeks. Therefore, every indication given to the probation officer at the time was that Chavez had disappeared. In announcing the decision to revoke Chavez's probation, the district court explained why this kind of noncompliance by a probationer is problematical:

> And I know that when I place people on probation I make that a clear condition that they are not to change their place where they are living without first getting prior permission. And the reason for that is ... to make sure that you're not moving into an environment that's not conducive to protection of society from you committing crimes in the future and not conducive to assisting you in being successful on probation and violating some other term or condition of your agreement on probation or your probation orders of the court.
>
> The other reason ... is because we're responsible for supervising you. Making sure we know where you are at all times. If we don't know where you live how in the world are we going to supervise you? We waste time that we don't have. Our probation officers are overworked and they have to waste time looking you up to supervise you and that takes away from time that

they should be using to supervise others in the interest of protecting society.

> . . . .
>
> It's pretty simple to call up the probation office and tell them you were living with your father. You failed to do that and the Court will take absconding—your whereabouts unknown—into consideration on disposition.
>
> . . . .
>
> The probation officers are responsible for supervising you while you're at work or at home. If you're not at work they waste their time going over there if they don't know where you are, then they waste time trying to find out where you're working. It's not our responsibility to find out about you. It's your responsibility to comply with the terms and conditions of this probation in the interest of protecting society.

These comments demonstrate that the district court reached its decision through an exercise of reason, with reference to factors that legitimately bear upon the revocation issue. Chavez's failure to report to his probation officer made it impossible for the officer to monitor Chavez's living and working circumstances, his conduct, or the type of people with whom he was associating. Without the ability to monitor a probationer's activities, the State is unable to assure that probationary release is consistent with the protection of society. Therefore, we hold that the district court did not abuse its discretion when it revoked Chavez's probation.

## C. Sentence Review

■ Once a trial court has concluded that a revocation of probation is proper, it must then determine what sentence should be ordered into execution. Upon the revocation of probation, the trial court may, on its own motion, reduce the sentence that was originally imposed. Idaho Criminal Rule 35; *State v. Hoskins,* 131 Idaho 670, 672, 962 P.2d 1054, 1056 (Ct.App.1998); *Adams,* 115 Idaho at 1054, 772 P.2d at 261. Here, Chavez received a unified six-year sentence with a two-year minimum term of imprisonment for methamphetamine possession and a consecutive five-year fixed term for escape. Those sentences required that he serve a

minimum of seven years in prison before eligibility for parole. The district court declined to reduce the sentences upon revoking probation and also denied Chavez's subsequent motion to reduce the sentences. Chavez contends that, given the history of this case, the sentences are excessive and, therefore, the district court erred by failing to order a sentence reduction when probation was revoked.

A sentence is reviewed by this Court for an abuse of discretion. *State v. Wolfe*, 99 Idaho 382, 384, 582 P.2d 728, 730 (1978); *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). The reasonableness of a term of imprisonment must be measured against the sentencing goals of protecting society, deterrence, rehabilitation and retribution. *State v. Young*, 119 Idaho 510, 511, 808 P.2d 429, 430 (Ct.App.1991); *Sanchez*, 115 Idaho 776, 777, 769 P.2d 1148, 1149 (Ct.App.1989); *Toohill, supra.*

In examining a claim that a sentence is excessive, we conduct an independent review of the record, focusing on the nature of the offense and the character of the offender. *State v. Hernandez*, 121 Idaho 114, 117–18, 822 P.2d 1011, 1014–15 (Ct.App. 1991); *Young, supra.* When we review a sentence that is ordered into execution following a period of probation, we do not base our review upon the facts existing when the sentence was imposed. Rather we examine all the circumstances bearing upon the decision to revoke probation and execute the sentence, including events that occurred between the original pronouncement of the sentence and the revocation of probation. *Adams*, 115 Idaho at 1055, 772 P.2d at 262; *State v. Grove*, 109 Idaho 372, 373, 707 P.2d 483, 484 (Ct.App.1985); *State v. Tucker*, 103 Idaho 885, 888, 655 P.2d 92, 95 (Ct.App.1982). A sentence will not be reduced on appeal unless it is excessive under any reasonable view of the facts. *State v. Charboneau*, 124 Idaho 497, 500, 861 P.2d 67, 70 (1993); *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992).

Having conducted an independent review of the record, and applying the foregoing standards, we conclude that although Chavez's sentence for possession of methamphetamine is reasonable, his fixed five-year sentence for escape is excessive. The circumstances of Chavez's escape were not aggravated or egregious. Indeed, the mitigating circumstances—Chavez's legitimate concern for the safety of his family—were so weighty that the prosecutor was led to recommend that Chavez be placed on probation for this offense. The escape did not involve the breaking out of any correctional facility nor the use or threat of violence against correctional officers. Nor does Chavez have a criminal record that justifies such a severe sanction for the escape offense. Chavez's only prior convictions are driving under the influence and driving with a suspended license, together with one 1981 misdemeanor larceny conviction for which he was fined $50 and sentenced to one year of unsupervised probation. None of his offenses were crimes of violence and, excepting the seventeen-year-old misdemeanor larceny, none victimized other people.

Particularly important to our conclusion that the sentence is excessive is the evidence of Chavez's overall performance while on probation following his escape conviction. This is a rare case where, notwithstanding the existence of probation violations, the defendant's actions during his probation term weigh *against* a severe sentence. During the nearly four years that Chavez was on probation for the escape, he did not commit new crimes or acts of violence, and he took many rehabilitative steps. Despite a history of drug and alcohol abuse, he stopped using those substances, as confirmed by periodic urine tests. He enrolled in and completed a drug counseling program. Prior to his back injury, he maintained stable employment over a period of years, and at times during his probation he carried two jobs. During periods when he was incarcerated in the county jail, he was described as a model prisoner, courteous and respectful to officers. He was even credited with helping diffuse tension among jail inmates with his humor. Although Chavez committed probation violations that we have found sufficient to justify revocation of his probation, these transgressions were not egregious. When Chavez moved out of his residence due to marital discord, he did not attempt to abscond from supervision by leaving the area. Rather, he remained nearby, living with his father, and

voluntarily turned himself in when he learned that a warrant for his arrest had been issued.

All of these circumstances indicate that, notwithstanding his probation violations, Chavez made significant rehabilitative progress while on probation, and it is unlikely that such a lengthy term of incarceration for the escape is needed for the protection of society, to deter future criminal conduct by Chavez, to promote his rehabilitation, or to exact retribution commensurate with the type of escape that he committed.

The sentence imposed by the district court for the escape is the maximum sentence permitted by statute for that offense, a fixed five-year term. *See* I.C. §§ 18–112, 18–2505; *State v. Holton,* 120 Idaho 112, 113, 813 P.2d 923, 924 (Ct.App.1991); *State v. Briggs,* 113 Idaho 71, 72, 741 P.2d 358, 359 (Ct.App.1987). We conclude that a sentence of this severity is unwarranted in view of the circumstances of the particular offense involved, Chavez's overall record, and his demonstration of positive lifestyle changes. Accordingly, we modify Chavez's sentence for escape to a consecutive one-year determinate term of imprisonment.

### CONCLUSION

The district court's decision to revoke probation is supported by substantial evidence and is warranted by the probation violations found. That decision is therefore affirmed. We also affirm Chavez's sentence for possession of methamphetamine. However, the district court's decision to order into execution the original sentence for escape, without reduction, upon the revocation of Chavez's probation is an abuse of discretion. We therefore modify the sentence for escape to a consecutive one-year determinate term. On remand, the district court is directed to enter an amended judgment reflecting this modification of Chavez's sentence.

Judge SCHWARTZMAN concurs.

Chief Judge PERRY dissents without opinion.

