IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 38574

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2012 Unpublished Opinion No. 711 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: November 9, 2012 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| THOMAS EDWARD BOYCE, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael R. McLaughlin, District Judge.

Order revoking probation and reducing sentence, <u>reversed</u> and <u>case remanded</u>.

Sara B. Thomas, State Appellate Public Defender; Shawn F. Wilkerson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

Thomas Edward Boyce appeals from the district court's order revoking his probation and imposing a reduced sentence for his conviction for grand theft. He also argues the Idaho Supreme Court erred in denying his motion to augment the record on appeal. For the reasons set forth below, we reverse the district court's order revoking probation and reducing sentence.

I.

FACTS AND PROCEDURE

In October 2002, while on probation for grand theft, Boyce stole $2700 from his employer to pay off a gambling debt. Boyce was charged with grand theft and pled guilty. The district court imposed a unified sentence of ten years, with three years determinate, and retained jurisdiction. At the conclusion of the period of retained jurisdiction, in June 2003, the district court suspended Boyce's sentence and placed him on probation for ten years. His supervision was eventually transferred to Nevada pursuant to an interstate compact.

1

On June 7, 2010, Boyce's employer filed a police report, alleging $1000 had been stolen from the company.[1] Boyce's probation officer and other law enforcement officials attempted to locate Boyce, but were unsuccessful for several weeks.[2] When questioned, Boyce's family members told his probation officer they had not seen Boyce since before June 7, 2010. On July 1, 2010, the State of Idaho filed a motion for a probation violation, alleging Boyce changed his residence without obtaining written permission from his probation officer, absconded from supervision, and stole $1000 from his employer. Officials in Nevada declined to pursue theft charges due to a lack of evidence, and Idaho officials, likewise, dismissed the theft allegation in regard to revocation of Boyce's probation. At the probation violation hearing, Boyce insisted he did not abscond, but went camping for approximately three and a half weeks. He testified that at his regularly scheduled monthly meeting with his probation officer, on the first Wednesday in June, he informed his probation officer of his general plan to go camping the "next week." As to the allegation he moved without prior written permission, Boyce stated his mother and a friend moved his belongings without Boyce's knowledge while Boyce was camping. Boyce stated he informed his probation officer of the move the day after he returned from camping during their regularly scheduled monthly meeting in July. The district court found Boyce violated the terms of his probation by changing his residence prior to receiving written permission and absconding from supervision, but noted they were largely "technical" violations. The court delayed making a decision as to the revocation of probation, giving Boyce, who was incarcerated at the time, several months to find a structured living situation and employment. After reconvening several months later, the district court revoked Boyce's probation. The court exercised its Idaho

---

[1]    It is not entirely clear from the record that the employer accused Boyce of being the thief; however, the parties appear to have proceeded under that assumption.

[2]    Information as to the type and number of attempted contacts are not contained in the record, as the State based its motion for a probation violation entirely on the somewhat cursory report of a violation submitted by the Nevada parole officer, which did not contain this information. Nor is there an explanation in the record as to why, if Boyce indeed informed his probation officer of his plan to go camping, the probation officer filed a report indicating Boyce was missing, apparently without leaving Boyce any messages that his presence was required. The Idaho probation officer who testified at Boyce's probation violation hearing had not directly communicated with Boyce's Nevada parole officer and had no additional information as to the circumstances.

Criminal Rule 35 authority and reduced Boyce's sentence to a unified term of eight years, with three years determinate, and gave Boyce credit for 384 days of incarceration.

Boyce appealed the revocation of his probation to the Idaho Supreme Court and filed a "Motion to Augment and to Suspend the Briefing Schedule and Statement in Support Thereof," requesting augmentation of the record with the transcript of Boyce's change of plea hearing held in November 2002, the transcript of his sentencing hearing held in December 2002, and the transcript of a jurisdictional review hearing held in June 2003.[3] The Supreme Court denied the motion. Boyce now appeals from the revocation of his probation.[4]

## II.

## ANALYSIS

Although conceding he violated the terms of his probation, Boyce argues the district court abused its discretion when it revoked his probation. Idaho Code § 20-222 authorizes the revocation of probation at any time if the probationer violates any condition of the probation. Hence, once a violation has been found, the district court must determine whether it is of such seriousness as to warrant revoking probation. *State v. Chavez*, 134 Idaho 308, 312, 1 P.3d 809, 813 (Ct. App. 2000). However, probation may not be revoked arbitrarily. *State v. Adams*, 115 Idaho 1053, 1055, 772 P.2d 260, 262 (Ct. App. 1989). In making this discretionary decision, the trial court must examine whether probation is achieving the goal of rehabilitation and whether continuation of the probation is consistent with the protection of society. *State v. Leach*, 135 Idaho 525, 529, 20 P.3d 709, 713 (Ct. App. 2001); *Chavez*, 134 Idaho at 312, 1 P.3d at 813; *State v. Jones*, 123 Idaho 315, 318, 847 P.2d 1176, 1179 (Ct. App. 1993); *State v. Hass*, 114 Idaho 554, 558, 758 P.2d 713, 717 (Ct. App. 1988). If a knowing and intentional probation violation has been proved, a district court's decision to revoke probation will be reviewed for an abuse of

---

[3] In addition to these three transcripts, Boyce also asserts in his appellant's brief that he is challenging the Idaho Supreme Court's denial of his request for transcripts of an "Admit/Deny" hearing held on April 19, 2010, and a disposition hearing held on August 2, 2010. A request for these transcripts, however, was not included in Boyce's motion to augment, nor were they referenced in the Supreme Court's order denying the motion to augment. As such, we do not address them in this appeal.

[4] Boyce also contends the Supreme Court erred in denying his motion to augment the record on appeal. However, because we reverse the revocation of probation, we need not address this issue.

discretion.[5]  I.C. § 20-222; *Leach*, 135 Idaho at 529, 20 P.3d at 713; *State v. Corder*, 115 Idaho 1137, 1138, 772 P.2d 1231, 1232 (Ct. App. 1989).  In determining whether such an abuse occurred, the appellate inquiry centers on whether the sentencing court acted within the boundaries of its discretion, consistent with any legal standards applicable to its specific choices, and whether the court reached its decision by an exercise of reason.  *State v. Lafferty*, 125 Idaho 378, 381, 870 P.2d 1337, 1340 (Ct. App. 1994).

When considering whether to revoke probation as a result of Boyce's violations, the district court first noted Boyce could not return to Nevada because he could not obtain probation supervision there.  It also recognized Boyce had been successful on probation for a significant amount of time and granted Boyce the opportunity to identify a "structured environment" in which to live, as well as employment, with the court to revisit the situation in approximately two months.  When the parties reconvened, Boyce indicated he did not have a support system in the area, but obtained a letter from the Boise Rescue Mission stating he could live in their shelter and, although he did not have employment, had called "Labor Ready" and signed up.  In deciding to revoke probation, the court stated:

> [W]hen the Court had originally retained jurisdiction in your case back in 2003, it had been the Court's hope that you would move on and succeed with probation. And, frankly, what's been demonstrated here from your record is that you haven't accepted the responsibilities of probation.  And one of the primary things the Court has to look at is whether or not the Court has a belief that the person can comply with the terms and conditions of probation, otherwise we make a mockery of probation.
> And I know you tried your best here, but--and sometimes the Mission will put together a lengthy program or up to a year.  In this case, they obviously invited you into the Mission and they talk about the River of Life shelter. Frankly, it's not the level of structure.  And I realize you're incarcerated.  It's tough to get a job whether you're incarcerated or not, but I just still at this point do not have an abiding belief that you can comply with probation.

It is apparent from the record that the district court based its decision to revoke probation upon Boyce's then-current living situation and employment status rather than Boyce's

---

[5]     If a probationer's violation of a probation condition was not willful, or was beyond the probationer's control, a court may not revoke probation and order imprisonment without first considering alternative methods to address the violation.  *State v. Leach*, 135 Idaho 525, 529, 20 P.3d 707, 713 (Ct. App. 2001) (citing *Bearden v. Georgia*, 461 U.S. 660, 672-73 (1983)); *State v. Lafferty*, 125 Idaho 378, 382-83, 870 P.2d 1337, 1341-42 (Ct. App. 1994).

"technical" probation violations. Indeed, the district court revoked probation during the second hearing without reference to any behavior associated with the asserted violations or other behavior potentially violative of probation and/or which might implicate the need for protection of society. Thus, as far as we are able to discern, the district court based the revocation on its belief that Boyce's efforts in finding suitable housing and employment were inadequate and, therefore, his prospects for successfully continuing on probation were limited.[6] In so doing, however, the district court left this Court with a very limited record to review. Most importantly, the district court did not make the requisite finding that Boyce's continuation on probation, including the proposed living and employment situations, was inadequate to facilitate rehabilitation and/or threatened the protection of society. *See Leach*, 135 Idaho at 529, 20 P.3d at 713.

This stands in contrast to findings in *State v. Sanchez*, 149 Idaho 102, 233 P.3d 33 (2009), where the Idaho Supreme Court considered whether revocation of Sanchez's probation for failing to report to his probation officer was an abuse of discretion. Sanchez pled guilty to one count of aggravated battery following the stabbing of two men in a bar parking lot and was placed on probation. At the time he was placed on probation, he had absconded from parole in California by coming to Idaho and, thus, a special term of his Idaho probation indicated his probation was specifically conditioned upon his parole in California being revoked and him being jailed there. Sanchez was briefly incarcerated upon his return to California, but soon began residing at a halfway house. While there, he violated his California parole once by breaking curfew and, on a separate occasion, his parole was revoked for seven months after he failed to attend a required batterer's treatment program. Idaho officials eventually recommended the district court revoke Sanchez's probation, alleging he violated the terms and conditions in various ways, including failing to report to his Idaho probation officer. At the hearing, Sanchez testified he was unable to contact his probation officer because he could not afford to use the pay

---

[6] Prior to committing the crime that led to probation in this case, Boyce had violated an earlier probation and, on at least two occasions, explained absences as due to "camping." As noted, Boyce was on probation in this case from June 2003 to June 2010, residing in Nevada. During that time, no charges of probation violation were brought against Boyce. However, while living in Nevada in 2009, Boyce was twice arrested, but neither charge was prosecuted. Boyce contends his wife was sleeping with the deputy sheriff and the false charges arose in connection with those circumstances. Additional details are absent from our record. While the district court may have been aware of these facts, the court made no note of them in revoking probation.

phone at the halfway house. The district court found Sanchez violated his probation by failing to comply with the reporting requirements and revoked probation, noting it initially placed Sanchez on probation in the belief he would be incarcerated in California.

Sanchez appealed and this Court reversed the district court's order, holding that even assuming the violation was willful, the district court abused its discretion in revoking probation because there was no indication Sanchez's probation was not serving its rehabilitative purpose and sufficiently protecting society. *Id*. at 103, 233 P.3d at 34. On review, however, the Supreme Court concluded the district court did not err in revoking Sanchez's probation because, even assuming the violation was not willful, the district court sufficiently considered alternative methods to incarceration. *Id*. at 107, 233 P.3d at 38. Specifically, the district court considered the halfway house Sanchez was residing in and determined the program *was not sufficient to protect the public or provide for Sanchez's rehabilitation*:

> Here we have a defendant who has a history of violence, history of drug dealing, a history of failing to report, absconding in California, who gets a sentence out of this court suspended on the promise that he would be incarcerated in California . . . goes down there, gets incarcerated for a brief period, gets paroled.
> Paroled by those folks to a halfway house. Does not stay in the halfway house, has reporting problems there, apparently. But I know he has them [in Idaho] . . . .
> And while on its face may appear to be a technical violation, in my view and finding and, in the exercise of discretion, is a far greater violation. I would have to find, Mr. Sanchez, that you're not supervisable in this community.

*Id*. at 106, 233 P.3d at 37. The Supreme Court noted the district court possessed extensive knowledge of Sanchez's background, including his prior convictions for domestic violence and burglary and testing positive for methamphetamine, and recognized the seriousness of the underlying crime and the fact the court only imposed probation upon the belief Sanchez would be incarcerated in California, all of which led the district court to conclude the halfway house in California was not sufficient to protect the public or provide for Sanchez's rehabilitation. *Id*. at 106-07, 233 P.3d at 37-38. The Supreme Court concluded that given Sanchez's history and background "and the problems the [district] court viewed him to be having with the alternatives to incarceration," the district court was acting within the boundaries of its discretion and within applicable legal standards in revoking probation. *Id*. at 107, 233 P.3d at 38.

By contrast in this case, the district court focused on Boyce's lack of housing and employment, but did not articulate the required findings as to whether, in light of these and other relevant factors, probation was achieving the goal of rehabilitation and whether continuation of the probation was consistent with the protection of society. Nor is the basis for such a finding evident in the record. The district court's finding in *Sanchez*, that residence in the halfway house was not sufficient to protect the public or provide for Sanchez's rehabilitation, was based on serious instances of violence, drug use, and Sanchez's *continued* inability to comply with terms of probation (as evidence by the fact he absconded from supervision in California), as well as the fact the district court only reluctantly imposed probation in the first place. In this case, however, we are faced with no such serious continued behavior or initial reluctance to grant probation. In fact, Boyce had been on probation, living in his own residence, for seven years without a violation and had completed restitution and a treatment program for his underlying gambling problems.

As mentioned above, in determining whether to revoke probation, the trial court must examine whether probation is achieving the goal of rehabilitation and whether continuation of the probation is consistent with the protection of society. *Leach*, 135 Idaho at 529, 20 P.3d at 713. Here, although the district court identified Boyce's lack of housing and employment as the essential basis for revocation, it made no findings as to how these factors affected, if at all, the requisite inquiry into the rehabilitative and public impact of continuing probation. Given the "technical" nature of the violations, and the relatively clean record Boyce maintained over seven years of probation, the outcome of such an inquiry is not clear. Thus, where the record is inadequate for us to conclude the court properly considered the relevant factors in revoking probation, we are constrained to find that revocation of probation was an abuse of discretion. Accordingly, we reverse the district court's order revoking probation and reducing sentence and remand the case.

Chief Judge GRATTON **CONCURS.**

Judge MELANSON, **DISSENTING**

I respectfully dissent. In 1997, Boyce was employed at a fast food restaurant where he was sometimes responsible for making bank deposits of the restaurant's cash receipts. Instead of making a deposit, he decided to take almost $9000 of his employer's money and go on what he referred to as a "vacation" to Nevada and California. While in Nevada, he gambled away $5000

7

of the stolen money. Boyce was apprehended when he returned from his vacation. After admitting to a gambling problem, he was granted a withheld judgment. One of the terms of his probation required him to pay restitution to his former employer. About three years later, a report of probation violation was filed alleging that Boyce failed to pay restitution, failed to maintain full-time employment, changed residence without permission, failed to report to his probation officer, and failed to obtain permission from his probation officer before leaving the state. It was also alleged that beer was found at his residence and that, during booking, he appeared to be under the influence and admitted that he had been drinking. Notably, it was alleged that Boyce admitted that he had gone "camping" for a week in order to avoid contact with his probation officer. The out-of-state travel involved trips to see his mother in Nevada. As a result of the probation violations, the withheld judgment was revoked and Boyce was ordered to serve jail time after which he was returned to probation. Only a matter of months after being released from jail, he was employed at another fast food restaurant where he had access to the safe. He stole $2700 from this employer and used $2500 of the stolen money to pay a gambling debt. The following day, Boyce was questioned by the police and admitted that he had stolen the money in order to pay the gambling debt because some "friends" he could not identify had threatened him with bodily harm if he did not pay. He also told the officers that, after paying his gambling debt, he went to Idaho City to "camp." He would later state that he spent the night in his vehicle at Lucky Peak. Boyce was charged with grand theft and ultimately pled guilty. After successfully completing the retained jurisdiction program, he was granted probation in this case in July 2003.[1] Sometime thereafter, Boyce moved to Nevada to be supervised under the interstate compact.

While living in Nevada in 2009, Boyce was arrested on two occasions--once for assault with a deadly weapon and domestic battery and another time for violation of a protective order and resisting or obstructing a police officer. These charges were not prosecuted and did not result in a probation violation. Boyce attributes the charges to his belief that a sheriff's deputy was sleeping with his wife and that he was being harassed by this deputy and at least one other

---

[1]  As a result of the grand theft charges in this case, a report of probation violation was filed in the 1997 case alleging that Boyce had failed to pay restitution and had been charged with grand theft. It appears that the court in that case also retained jurisdiction after Boyce admitted or was found to have violated probation. Presumably, he was also granted probation in that case after completing the rider program.

8

member of the sheriff's department. In June 2010, while Boyce was still on probation being supervised in Nevada, he decided to embark on a "camping" trip for between three and four weeks. While he was away, it was discovered that $1000 was missing from a residence Boyce had been watching for his employer before he left. After the missing money was reported, neither law enforcement officers nor Boyce's probation officer in Nevada could locate Boyce because he was camping. It was also discovered that he had been evicted from his residence while he was gone. Boyce contacted his probation officer when he returned but, by then, a violation had already been filed alleging that Boyce violated his probation by committing a new crime and moving without permission and absconding supervision. Ultimately, Nevada authorities did not prosecute the theft charge. After conducting an evidentiary hearing, the district court found that Boyce had violated probation by moving without obtaining his probation officer's permission and absconded. The district court recognized that the absconding charge was a technical violation because Boyce had reported as required and had told his probation officer he was going to go camping, but he had not obtained his probation officer's permission to be absent for such an extended period.

The majority holds that the district court abused its discretion in revoking probation because the violations were relatively minor and it was not reasonable for the district court to conclude probation was not achieving its rehabilitative effect and goal of protecting society. I respect the view of the majority and I perceive that this is a somewhat close case because of the circumstances of the violations. I dissent, however, because in my view, the district court acted within the outer bounds of his discretion in revoking Boyce's probation. Where a probation violation is not willful a court may revoke probation if it determines that alternatives to imprisonment are not adequate in a particular situation to meet the state's legitimate interest in punishment, deterrence, or the protection of society. *State v. Sanchez*, 149 Idaho 102, 106, 233 P.3d 33, 37 (2009). Here, assuming that Boyce's probation violations were not willful, it was, in my view, reasonable for the court to take a gloomy view of Boyce's chance of success on probation and to be a little skeptical of any claim that probation was serving its rehabilitative purpose. For one thing, Boyce could not return to Nevada where he had family support. Furthermore, he had no job or even a prospect of a job and intended to reside at a shelter home. These practical hurdles to Boyce's success on probation certainly cast considerable doubt on the adequacy of alternatives to imprisonment to meet the legitimate goals of sentencing. For the

9

foregoing reasons, I would affirm the decision of the district court revoking Boyce's probation and imposing sentence.

Because the majority reverses on the merits, the lead opinion does not address Boyce's claims regarding his motion to augment the record.  I simply note that I would decline to address those claims for the reasons stated in *State v. Morgan,* ___Idaho ___, ___P.3d ___, (Ct. App. July 10, 2012) (*pet. for rev. pending*).