**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket Nos. 38541/38590/38600**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2012 Unpublished Opinion No. 778** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: December 31, 2012** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **JUSTIN RYAN MOSS,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| **Defendant-Appellant.** | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Richard D. Greenwood, District Judge; Hon. Michael E. Wetherell, District Judge.

Orders revoking probation and executing suspended sentences, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Shawn F. Wilkerson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

Justin Ryan Moss appeals from three orders that revoked his probation in three separate cases, consolidated for appeal. In each case, Moss argues the Idaho Supreme Court denied him due process and equal protection when it denied his motion to augment the record with transcripts from various hearings. Moss additionally argues that in each case, the district courts respectively abused their discretion in revoking his probation. Finally, Moss argues that, in just one of the cases, the district court abused its discretion when it denied his motion for a reduction in sentence. For the reasons set forth below, we affirm.

1

# I.

# FACTS AND PROCEDURE

This appeal involves three underlying criminal cases and convictions for issuing checks without funds, grand theft, and forgery.[1] In 2006, Moss pled guilty to issuing checks without funds. The district court withheld judgment and placed Moss on probation. In 2008, Moss fraudulently obtained an individual's financial transaction card information and used it to make purchases. The State charged Moss with grand theft and alleged probation violations in the case relating to issuing checks without funds based on the new criminal conduct. Pursuant to a motion by the State, the cases were consolidated for purposes of entering a plea and sentencing. Moss pled guilty to grand theft and admitted the probation violations. The district court entered a judgment of conviction for grand theft and imposed a unified sentence of ten years, with five years determinate, but suspended the sentence and placed Moss on probation. After finding Moss had violated his probation, the district court revoked the withheld judgment in the issuing checks without funds case; imposed a unified sentence of three years, with eighteen months determinate; but suspended the sentence and continued probation. The court ordered the sentences in both cases to run concurrently.

In 2009, Moss forged a relative's signature on various student loan application documents after the relative had declined to co-sign on the loans. After Moss received the loan checks made out to both him and the co-signer, Moss again forged the signature of his relative in order to cash the checks. The State charged Moss with five counts of forgery and also filed allegations of probation violations in the prior two cases. Moss pled guilty to two counts of forgery. The State moved to dismiss the remaining counts and also dismissed a separate case charging Moss with four counts of again issuing checks without sufficient funds. Moss also admitted to violating his probation in the two prior cases. Upon entering a judgment of conviction to two counts of forgery, the district court imposed two concurrent, unified sentences of ten years, with five years determinate, but retained jurisdiction. As to the probation violations in the prior two cases, the district court executed the suspended sentences, but retained

---

[1]     The issuing checks without funds and grand theft cases were tried before the same district court, whereas the forgery case proceeded before a different court within the same district. The cases were not consolidated until the appeal; therefore, references to the "district court," in relation to the respective probation revocations, refer to the district court before which the case was originally tried.

jurisdiction in those two cases as well. The district court ordered the sentences to run concurrently with the sentences imposed for the forgery convictions. Moss successfully completed his period of retained jurisdiction as to all the cases and the court placed Moss on probation.

In June 2010, the State filed allegations of probation violations in each of the three cases, all of which were based on the fact Moss moved to California very shortly after he was placed on probation. By moving, Moss committed the following probation violations: he changed residences without permission; he left his assigned district without permission; he failed to report to his probation officer as instructed; and he absconded from supervision. The district court held a probation violation evidentiary hearing in the forgery case and found violations on all four allegations. At the disposition hearing, Moss made an oral request for a reduction of his suspended sentences if probation was to be revoked. The district court revoked probation and executed the suspended sentences without reduction. Moss later filed a motion for a reduction of his sentences pursuant to Idaho Criminal Rule 35; however, no order regarding the court's disposition of that motion appears in the record.

In light of the finding of probation violations in the forgery case, the district court found Moss was collaterally estopped from challenging the probation violations in the other two cases, based on the same conduct, under the authority in *State v. Dempsey*, 146 Idaho 327, 193 P.3d 874 (Ct. App. 2008). Thereafter, the district court revoked Moss's probation in those cases and executed the suspended sentences, consistent with a request by Moss that it do so. The probation revocations, issued in three separate orders, were timely appealed and consolidated for disposition in this Court.

Pending appeal and before assignment to this Court, Moss filed a motion to augment the record and suspend the briefing schedule, requesting that the record on appeal be augmented with various transcripts. The State objected to augmenting the record, and the Idaho Supreme Court entered an order denying Moss's motion. Upon assignment to this Court, Moss presents three issues: (1) whether the Idaho Supreme Court denied him due process and equal protection when it denied his motion to augment the record; (2) whether the district courts abused their discretion when they revoked Moss's probation in all three cases; and (3) whether the district court abused its discretion when it failed to reduce Moss's unified sentences of ten years, with five years determinate, for the two counts of forgery after revoking probation.

3

## II.

## DISCUSSION

**A.      Denial of the Motion to Augment the Record**

Moss first argues the Idaho Supreme Court violated his rights to due process and equal protection and his right to effective assistance of counsel by denying his motion to augment the record with various transcripts from each of the three cases consolidated on appeal, including the transcripts of a plea hearing, a sentencing hearing, the first probation violation admission hearing, and the first probation violation disposition hearing. We recently addressed a nearly identical argument in *State v. Morgan*, ___ Idaho ___, ___, 288 P.3d 835, 837 (Ct. App. 2012) where we said:

> We begin by disclaiming any authority to review and, in effect, reverse an Idaho Supreme Court decision on a motion made prior to assignment of the case to this Court on the ground that the Supreme Court decision was contrary to the state or federal constitutions or other law. Such an undertaking would be tantamount to the Court of Appeals entertaining an "appeal" from an Idaho Supreme Court decision and is plainly beyond the purview of this Court. Nevertheless, if a motion is, in effect, renewed by the movant, and new information or a new or expanded basis for the motion is presented to this Court that was not presented to the Supreme Court, we deem it within the authority of this Court to evaluate and rule on the renewed motion in the exercise of our responsibility to address all aspects of an appeal from the point of its assignment to this Court. Such may occur, for example, if the completed appellant's and/or respondent's briefs have refined, clarified, or expanded issues on appeal in such a way as to demonstrate the need for additional records or transcripts, or where new evidence is presented to support a renewed motion.

This is not such a circumstance, as Moss has not filed a renewed motion with this Court, nor has he presented to this Court any significant new facts or new justification in his briefs beyond that already advanced in his motion to the Supreme Court. In his motion, Moss requested the transcripts be augmented to the record because they "are necessary to address issues to be raised on appeal" and relevant "not only to the potential merits of the issues but also to create a complete record on appeal." In asking this Court to review the Supreme Court's denial of his motion, Moss asserts the same general arguments, but also more specifically asserts the denial of his motion violates his constitutional due process and equal protection rights. Thus, Moss does not assert new issues in asking us to review this issue, but asks that we find that by denying his request, the Idaho Supreme Court violated his constitutional rights. As this is clearly beyond the authority of this Court, we will not address the issue further.

4

**B.      Orders Revoking Probation**

Preliminarily, the State argues Moss is precluded, by the doctrine of invited error, from challenging the revocation of his probation in the issuing checks without funds case and the grand theft case because Moss stipulated to the execution of the suspended sentences.  The doctrine of invited error is the principle that a party is estopped from asserting an error when his or her own conduct induces the commission of the error.  *State v. Norton*, 151 Idaho 176, 187, 254 P.3d 77, 88 (Ct. App. 2011).  Its purpose is to prevent a party who prompted a particular action before the trial court to later challenge that action on appeal.  *State v. Blake*, 133 Idaho 237, 240, 985 P.2d 117, 120 (1999).  "One may not complain of errors one has consented to or acquiesced in."  *Norton*, 151 Idaho at 187, 254 P.3d at 88.  The invited error doctrine applies to sentencing decisions.  *State v. Leyva*, 117 Idaho 462, 465, 788 P.2d 863, 866 (Ct. App. 1990).

The probation violations alleged in the forgery case were identical to those alleged by the State in the issuing checks without funds case and the grand theft case.  Moss had a full and fair opportunity to an evidentiary hearing on the probation violations in regards to the forgery case, the issue was decided on its merits, and the decision was contained in the final, appealable order that revoked Moss's probation.  The district court took argument as to whether Moss was entitled to another evidentiary hearing in regards to the other cases and determined that, under *Dempsey*, Moss was not entitled to another evidentiary hearing, and was collaterally estopped from challenging the probation violations in the two cases.  Upon that decision, Moss stipulated to the execution of his suspended sentences in both cases.  We agree with the State that the doctrine of invited error estops Moss from challenging the district court's orders revoking his probation and requiring execution of his suspended sentences in the issuing checks without funds case and the grand theft case on appeal.

As to the forgery case, although conceding he violated the terms of his probation, Moss argues the district court abused its discretion when it revoked his probation.  Idaho Code § 20-222 authorizes the revocation of probation at any time if the probationer violates any condition of the probation.  Hence, once a violation has been found, the district court must determine whether it is of such seriousness as to warrant revoking probation.  *State v. Chavez*, 134 Idaho 308, 312, 1 P.3d 809, 813 (Ct. App. 2000).  Probation may not be revoked arbitrarily.  *State v. Adams*, 115 Idaho 1053, 1055, 772 P.2d 260, 262 (Ct. App. 1989).  In making this discretionary decision, the trial court must examine whether probation is achieving the goal of

rehabilitation and whether continuation of the probation is consistent with the protection of society. *State v. Leach*, 135 Idaho 525, 529, 20 P.3d 709, 713 (Ct. App. 2001); *Chavez*, 134 Idaho at 312, 1 P.3d at 813; *State v. Jones*, 123 Idaho 315, 318, 847 P.2d 1176, 1179 (Ct. App. 1993); *State v. Hass*, 114 Idaho 554, 558, 758 P.2d 713, 717 (Ct. App. 1988). If a knowing and intentional probation violation has been proved, a district court's decision to revoke probation will be reviewed for an abuse of discretion. I.C. § 20-222; *Leach*, 135 Idaho at 529, 20 P.3d at 713; *State v. Corder*, 115 Idaho 1137, 1138, 772 P.2d 1231, 1232 (Ct. App. 1989). In determining whether such an abuse occurred, the appellate inquiry centers on whether the sentencing court acted within the boundaries of its discretion, consistent with any legal standards applicable to its specific choices, and whether the court reached its decision by an exercise of reason. *State v. Lafferty*, 125 Idaho 378, 381, 870 P.2d 1337, 1340 (Ct. App. 1994).

Moss argues that in light of mitigating factors, the district court abused its discretion in revoking Moss's probation. Specifically, Moss points to the fact he was found to have violated his probation only because he absconded to California and there were no allegations that any new crimes had been committed. Moss contends that because the State did not allege Moss committed any new crimes, Moss's probation was not threatening to society. He further argues there were other mitigating factors such as the fact Moss was diagnosed with bipolar disorder and that his mental illness contributed to why he committed the underlying offenses. The State responds that Moss's arguments ignore the fact Moss had numerous opportunities for probation and, on each, he failed to comply with the terms either by committing additional crimes or violating other terms of probation. Additionally, the State argues the lack of a commission of a new crime does not, in and of itself, mean that Moss's probation was not threatening to society.

Moss has repeatedly shown he is unwilling or incapable of complying with the terms of probation. Moss committed his first offense, issuing checks without funds, which is included in this appeal, in 2006. While on probation for that offense, Moss committed a second offense and pled guilty to grand theft. Nonetheless, the district court suspended the imposed sentence for the grand theft conviction and placed Moss on probation; additionally, the district court continued probation in the first case despite the fact Moss violated his probation by incurring new criminal charges. During the probationary period for both of those offenses, Moss again committed new crimes. The State charged Moss with roughly nine counts in two separate criminal cases, but pursuant to a plea agreement, dismissed one case entirely and dismissed several charges in the

6

case to which Moss pled guilty to two counts of forgery. The district courts imposed two concurrent sentences for the forgery convictions, and on the probation violations in the other two cases, executed the suspended sentences. However, the district courts retained jurisdiction in all three cases, and at the completion of the retained jurisdiction period, *again* gave Moss the opportunity to successfully complete probation. At that juncture, Moss was fairly warned that was his last opportunity to comply with probationary terms and that further probation violations would result in the execution of his suspended sentences in each of the cases. Yet, *within days* of attending the probation orientation meeting, Moss left Idaho and moved to California.

At the probation revocation evidentiary hearing in the forgery case, both Moss's probation officer and Moss testified. The probation officer stated he never met Moss, until the day of the evidentiary hearing, because Moss never checked in with the probation officer. The probation officer had left several messages for Moss that went unreturned, though Moss did return one call and left a message stating that he did not understand why the Idaho probation office was trying to talk to him because he had transferred his probation to California. The probation officer also attempted to contact Moss at the residence Moss listed on the probation packet only to discover the Idaho address did not exist. It was not until the probation officer relayed via voicemail that he was going to file allegations of probation violations that Moss actually spoke to the probation officer. During that phone conversation, Moss claimed to have received permission to go to California in the form of a travel permit from a duty officer at probation services. Moss was told to fax a copy of the travel permit the following day; the probation officer never received a copy. The probation officer also checked the interstate compact records and searched for travel permit records and found none relating to Moss in regards to the most recent probationary period. The probation officer again spoke with Moss--who claimed to have sent a copy of the travel permit--and ordered Moss to return to Idaho within one week. Moss did not do so. The probation officer checked on the address Moss provided him as to Moss's residence in California and found that it, too, was incorrect. The probation officer had no further contact with Moss until he was arrested and extradited to Idaho nearly seven months later. When Moss testified, he claimed to have received verbal permission to go to California. He claimed he attempted to contact the probation officer numerous times but that the probation officer failed to return his calls. He also admitted that he did not have an assigned probation officer in California, though he supposedly transferred probation supervision

to California; did not contact the probation officer in Idaho for a period of nearly six months after they spoke on the phone; and went unsupervised for that period of time until his arrest and extradition to Idaho.

The district court made specific findings that Moss's testimony was not credible. The district court determined that, based on Moss's familiarity with probation terms and requirements, it was not credible that Moss thought he could receive verbal permission to move to California and that he could remain unsupervised for a prolonged period of time. Based on the facts and testimony presented, the district court concluded each of the probation violations was willful. At the probation violation disposition hearing, defense counsel argued Moss's mental health was a mitigating factor. He asserted that without medication for the bipolar disorder, Moss was likely to reoffend and that after probation began, Moss did not have the money to purchase the necessary medication. Although defense counsel argued Moss could have succeeded on probation if properly medicated, defense counsel did not ask that the court not revoke probation. Rather, defense counsel asked for another period of retained jurisdiction or a reduced determinate portion of the sentence. After listening to argument, the district court made clear that Moss had been given numerous opportunities to comply. The district court pointed out that Moss, before even meeting the probation officer, took it upon himself to move to California whether or not he was continuing to take medications for his mental health condition and that Moss was not, under the circumstances, an appropriate candidate for probation.

Additionally, the argument that Moss's recent probation violations were not as serious as the underlying crimes and did not involve the commission of new offenses is unavailing. According to the language in Idaho Code § 20-222, it is clear that a probation revocation does not have to be based on the commission of a new crime. Though the district court did not specifically speak of whether Moss's probation was achieving the goal of rehabilitation and whether continuation of the probation was consistent with the protection of society, the record demonstrates that Moss had no period of successful probationary time after serving the period of retained jurisdiction--Moss's *third* opportunity at probation as opposed to incarceration--and that without medication, Moss was likely to reoffend unless in a controlled environment. The district court did not abuse its discretion in revoking Moss's probation based on the foregoing facts and findings.

8

**C.  Failure to Reduce the Sentences after Revoking Probation**

The court may, after a probation violation has been established, order that the suspended sentence be executed or, in the alternative, the court is authorized under Idaho Criminal Rule 35 to reduce the sentence. *State v. Beckett*, 122 Idaho 324, 325, 834 P.2d 326, 327 (Ct. App. 1992). Whether to reduce a sentence is committed to the discretion of the trial court. *State v. McCarthy*, 145 Idaho 397, 400, 179 P.3d 360, 363 (Ct. App. 2008). Under our abuse of discretion review, a court's decision not to reduce a sentence after revoking probation is subject to the well-established standards governing whether a sentence is excessive. *State v. Hanington*, 148 Idaho 26, 27, 218 P.3d 5, 7 (Ct. App. 2009); *State v. Marks*, 116 Idaho 976, 978, 783 P.2d 315, 317 (Ct. App. 1989). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonably harsh in light of the primary objective of protecting society and the related goals of deterrence, rehabilitation, and retribution. *State v. Hoskins*, 131 Idaho 670, 672, 962 P.2d 1054, 1056 (Ct. App. 1998). In such appeals, an appellate court will not consider whether the sentence was excessive when originally pronounced in the judgment of conviction; our review is limited to whether the sentence was excessive in light of the circumstances existing when the court revoked probation. *State v. Jensen*, 138 Idaho 941, 944, 71 P.3d 1088, 1091 (Ct. App. 2003); *State v. Coffin*, 122 Idaho 392, 393-94, 834 P.2d 909, 910-11 (Ct. App. 1992). When reviewing the reasonableness of a sentence on an appeal from a probation revocation order, we do not base our review only upon events that occurred after the original pronouncement of sentence, but will examine the entire record, encompassing events before and after the original judgment, including, but not limited to, events that occurred during the probationary period. *Chavez*, 134 Idaho at 314, 1 P.3d at 815; *Coffin*, 122 Idaho at 394, 834 P.3d at 911.

Moss orally requested a reduction of his sentences at the probation violation disposition hearing in the forgery case and also filed a motion pursuant to Idaho Criminal Rule 35 for reduction of his sentences after his suspended sentences were executed. Though Moss states he is appealing the denial of either his oral request for a reduction of his sentences or his subsequently filed Rule 35 motion, we cannot find in the record a dispositive order or decision on the Rule 35 motion. We, therefore, construe this argument as one relating to the order revoking probation and executing the suspended sentences, in that the district court failed to sua sponte reduce the sentences upon revoking probation.

Moss asserts that, given any view of the facts, his concurrent unified sentences of ten years, with five years determinate, for the two forgery convictions are excessively harsh, largely because the district court did not consider his mental health issues. The State responds that the district court did not abuse its discretion in executing the original sentences based on the same reasons the court did not abuse its discretion in revoking probation.

Mental health evidence is a relevant mitigating factor when considering the imposition of a sentence. *State v. Payne*, 146 Idaho 548, 570, 199 P.3d 123, 145 (2008). Nonetheless, mental health as a mitigating factor need not always outweigh aggravating factors that contribute to the imposition of the sentence. *See State v. Miller*, 151 Idaho 828, 836, 264 P.3d 935, 943 (2011) (noting a defendant's mental condition need not be a controlling factor at sentencing). In originally imposing the sentences, Moss's defense counsel argued that Moss's bipolar disorder, young age, and family support were all mitigating factors. Contrary to Moss's statements that his mental health was ignored, the district court first stated that the presentence investigation painted a picture of Moss as self-centered, greedy, and manipulative and then specifically referred to Moss's bipolar disorder:

> I have met other people who are bipolar. It doesn't cause greed, and it doesn't cause theft. It causes excess behavior, but it doesn't necessarily cause excess illegal behavior.
>
> So I do not see that as a justification or excuse or even an explanation. It is certainly something that has to be dealt with and should be dealt with.

The district court examined the need to protect society, rehabilitation, and deterrence. It concluded that this was not a case to "make an example" out of and then accepted the State's recommendation for unified ten-year sentences, with five years determinate.

At the disposition hearing on the probation violations, defense counsel again argued that mental health was a mitigating factor and asked for a reduced sentence. The district court, in response, noted that whether medicated for his bipolar disorder or not, Moss moved to California, made excuses as to why he absconded, and delayed coming back to Idaho until he was arrested. The district court stated:

> I thought carefully when I imposed the original sentence--that is, the underlying sentence--as to what was appropriate at that time, taking into account your prior record as well as the circumstances of this case. And I think the original sentence was appropriate for the crimes, given your background and the goals of protecting society as well as deterrence to you and others.

In considering the many opportunities Moss had been provided to show his amenability and compliance with lesser punishments (probation and a rider) and avoid the imposed sentences, the district court determined it was time Moss was required to be accountable and that a reduction in the sentences at the time of disposition was not warranted. Upon this record, we find no abuse of discretion in the court's decision to execute the suspended sentences without reduction.

## III.

## CONCLUSION

Moss is precluded, by the application of the invited error doctrine, from challenging the district court's orders revoking his probation in two of the three cases presented on appeal. We conclude, in regards to the forgery case, that the district court did not abuse its discretion either in revoking probation or in executing the suspended sentences without reduction. Accordingly, we affirm the orders of the district courts revoking probation and executing the suspended sentences in all three cases.

Judge LANSING and Judge MELANSON **CONCUR.**